GARY GALLO *v.* MICHAEL J. BARILE ET AL.
(SC 17405)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.*

* The listing of justices reflects their seniority status as of the date of oral argument.

Argued October 16, 2006—officially released November 27, 2007

*Jon L. Schoenhorn,* for the appellant (plaintiff).

*Nancy A. Brouillet,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Margaret Q. Chapple,* assistant attorney general, for the appellees (defendants).

*Opinion*

PALMER, J. The dispositive issue raised by this appeal is whether statements made to the police in connection with a criminal investigation are absolutely

privileged or qualifiedly privileged. The appeal arises out of an action for, inter alia, defamation and intentional infliction of emotional distress brought by the plaintiff, Gary Gallo, who seeks compensatory damages for allegedly false and malicious statements that the defendants, Michael J. Barile, Paula Robarge and Ronald Roberts, had made to a state trooper conducting an investigation into the plaintiff's alleged criminal misconduct. The trial court rendered judgment for the defendants on the ground that the defendants' statements were subject to the absolute privilege that is afforded statements made in the course of a judicial proceeding. On appeal,[1] the plaintiff claims that the trial court improperly rendered judgment for the defendants because their statements are subject to a qualified privilege rather than an absolute privilege. We agree with the plaintiff and, therefore, reverse in part[2] the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On the morning of March 27, 2002, the plaintiff, an employee of the state department of social services (department), was involved in a verbal exchange with Barile, the plaintiff's immediate supervisor, at the department's New Britain office. Bridget Barrows Cooper and Robarge, both of whom were then department employees, witnessed the exchange. According to Cooper, the plaintiff's demeanor during the exchange was neither hostile nor threatening. Barile

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] Because the trial court, *R. Robinson, J.*, dismissed the plaintiff's claims of negligence against each of the defendants on an independent ground, namely, that the defendants, as state employees, were immune from personal liability for conduct that is not wanton, reckless or malicious; see General Statutes § 4-165; and the plaintiff does not challenge the court's dismissal of those claims on appeal, we affirm the trial court's judgment with respect to the dismissal of those claims. See footnote 5 of this opinion.

and Robarge, however, both described the plaintiff's conduct as aggressive, menacing and frightening, and indicated that it appeared that the plaintiff was about to become physically violent.

Barile subsequently reported his encounter with the plaintiff to Roberts, the field operations manager of the department's New Britain office, and Jeanne Anderson, the department's principal personnel officer. Anderson directed Barile to fill out a security and safety incident report, which is a preprinted form prepared by the department, and Barile completed the report as instructed. In addition, Robarge reported the incident to her immediate supervisor at the department. In accordance with her supervisor's instructions, Robarge also reported the incident to Anderson.

Later that afternoon, Anderson called the state police and reported the incident. Thereafter, William Taylor, a state trooper, arrived at the department's New Britain office to investigate. Barile, Robarge, Roberts[3] and Cooper each recounted their version of the events to Taylor, who, on the basis of this information, arrested the plaintiff for breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1).[4] The defendants also gave statements to investigators conducting an internal investigation for the department.

After a jury trial, the plaintiff was acquitted of the charge of breach of the peace in the second degree stemming from the incident of March 27, 2002. There-

[3] Roberts personally did not witness the encounter, and, consequently, the information that he provided to Taylor about the incident was predicated entirely on his conversations with the department employees who had witnessed the encounter.

[4] General Statutes § 53a-181 provides in relevant part: "(a) A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place . . . ."

after, the plaintiff commenced this action against Barile, Robarge and Roberts, alleging, inter alia, common-law defamation and intentional infliction of emotional distress.[5] The plaintiff claimed that the defendants wrongfully had accused him of engaging in threatening and harassing behavior in connection with the March 27, 2002 incident. Specifically, the plaintiff alleged that (1) the defendants' statements to the police and their testimony at his criminal trial were false and malicious, and (2) as a result of those statements and testimony, he had suffered harm to his reputation and standing in the community, which caused him great mental and physical distress.

The defendants subsequently filed a motion for summary judgment, claiming, inter alia, that their statements to Taylor and subsequent trial testimony were absolutely privileged. The trial court, *Shortall, J.,* granted the defendants' motion. With respect to the defendants' statements to Taylor, the trial court acknowledged the common-law rule that statements that a complaining witness makes to the police are subject to qualified immunity rather than absolute immunity.[6] E.g., *Petyan* v. *Ellis,* 200 Conn. 243, 252, 510

---

[5] The plaintiff's complaint initially included a claim of negligence against each of the three defendants. Thereafter, however, the trial court, *R. Robinson, J.,* granted the defendants' motions to dismiss only as to the plaintiff's negligence claims. The plaintiff has not appealed from that ruling, and, consequently, it is not the subject of this appeal.

[6] A qualified privilege protects false statements that are not made maliciously. In other words, "[a]lthough a qualified privilege insulates many defamatory statements and shields many defendants from liability, the privilege does not protect a defendant who makes statements that are both defamatory and malicious." *Gaudio* v. *Griffin Health Services Corp.,* 249 Conn. 523, 545, 733 A.2d 197 (1999); see also *Bleich* v. *Ortiz,* 196 Conn. 498, 504, 493 A.2d 236 (1985) ("[e]ven when a legitimate interest is at stake, a claim of conditional privilege is defeated if the defendant acts with malice in making the defamatory communication at issue"). Furthermore, as this court recently has explained, "the malice required to overcome a qualified privilege in defamation cases is malice in fact or actual malice." *Hopkins* v. *O'Connor,* 282 Conn. 821, 845, 925 A.2d 1030 (2007). "Actual malice requires that the statement, when made, be made with actual knowledge

A.2d 1337 (1986) (statements that complaining witness makes to police are subject only to qualified privilege). The trial court also observed, however, that, at common law, statements made in the course of a judicial or quasi-judicial proceeding are protected by an absolute privilege. The trial court thereafter concluded that the defendants were not "complaining witnesses," as that term was used in *Petyan*, because they had not initiated contact with the police. The trial court further concluded that the statements that the defendants made in the course of the police investigation were entitled to absolute immunity because the investigation properly is characterized as the initial stage of a judicial proceeding.

In reaching its conclusion, the trial court recognized that "affording those who claim to be witnesses to [a] crime an absolute privilege for statements [that] they make to the police investigating that crime, in effect, gives them a license to lie without fear of personal liability and with potentially disastrous consequences for the person being investigated." The trial court explained, however, that its conclusion was dictated by *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 93, 856 A.2d 372 (2004), in which this court held that an internal affairs investigation conducted by the police in response to a citizen complaint is a quasi-judicial proceeding[7] and, therefore, that statements made in the

that it was false or with reckless disregard of whether it was false. . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth. . . . Malice in fact is sufficiently shown by proof that the [statement was] made with improper and unjustifiable motives." (Citations omitted; internal quotation marks omitted.) Id., 846–47; see also *Bleich* v. *Ortiz*, supra, 504 ("[f]or purposes of our law of defamation, malice is not restricted to hatred, spite or ill will against a plaintiff, but includes any improper or unjustifiable motive").

[7] As the trial court observed, statements made in the course of quasi-judicial proceedings, like those made in the course of judicial proceedings, are subject to an absolute privilege. See, e.g., *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 84; *Kelley* v. *Bonney*, 221 Conn. 549, 571, 606 A.2d 693 (1992).

context of the internal affairs investigation, including the citizen complaint itself, were subject to an absolute privilege.[8] The trial court also recognized that, unless an absolute privilege is extended to statements made by persons who are interviewed by police officers in the course of a criminal investigation, "[w]itnesses to crime might otherwise be deterred from reporting to the police what they have seen and heard by the threat that those implicated by their reports will bring litigation against them."

On appeal, the plaintiff claims that the trial court improperly granted the defendants' motion for summary judgment because the defendants' statements to the police are subject to a qualified privilege, not an absolute privilege.[9] We agree with the plaintiff.[10]

Before addressing the merits of the parties' claims, we first set forth the applicable legal principles.[11] "It is

[8] In particular, the trial court observed that, in *Craig*, this court had "characterize[d] the *investigation* conducted in connection with the internal affairs complaint as a quasi-judicial proceeding. If an absolute privilege extends to statements made in the course of a police internal affairs investigation, a fortiori, it must extend to statements made to police in the course of their investigation of alleged criminal conduct." (Emphasis in original.)

[9] We note that the plaintiff does not challenge the trial court's conclusion that the defendants' testimony at the plaintiff's criminal trial is absolutely privileged.

[10] The plaintiff alternatively claims that the trial judge who granted the defendants' motion for summary judgment should not have entertained the motion because that same judge previously had presided over the plaintiff's criminal trial. We disagree with this contention because the plaintiff has failed to present any facts to support his claim that that judge should be disqualified. We need not analyze this claim further, however, in light of our conclusion that the plaintiff is entitled to prevail on other grounds.

[11] We note, preliminarily, the standard governing appellate review of a trial court's ruling on a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and

well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged [as] long as they are in some way pertinent to the subject of the controversy." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, 282 Conn. 821, 830–31, 925 A.2d 1030 (2007). The effect of an absolute privilege is that damages cannot be recovered for the publication of the privileged statement even if the statement is false and malicious. E.g., *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 84. The absolute privilege for statements made in the course of a judicial proceeding applies equally to defamation claims; id.; and claims for intentional infliction of emotional distress. *DeLaurentis* v. *New Haven*, 220 Conn. 225, 265, 597 A.2d 807 (1991).

"The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . The rationale underlying the privilege is grounded upon the proper and efficient administration of justice. . . . Participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of [actions seeking damages for statements made by such participants in the course of the judicial proceeding]." (Citations omitted; internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 838–39. "Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial . . . proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit." *Chadha* v. *Charlotte Hungerford*

that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the [defendants'] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Colangelo* v. *Heckelman*, 279 Conn. 177, 182, 900 A.2d 1266 (2006).

*Hospital*, 272 Conn. 776, 787, 865 A.2d 1163 (2005). "In making [the] determination [of whether a particular statement is made in the course of a judicial proceeding], the court must decide as a matter of law whether the allegedly [false and malicious] statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial proceeding, so as to qualify for the privilege. The test for relevancy is generous, and 'judicial proceeding' has been defined liberally to encompass much more than civil litigation or criminal trials." *Hopkins* v. *O'Connor*, supra, 839.

Nevertheless, as this court previously has observed, "only qualified immunity exists in some areas that have a connection to the judicial process, particularly [when] constitutional rights of an individual are concerned." *Petyan* v. *Ellis*, supra, 200 Conn. 252. Indeed, we have stated, albeit in dictum, that "a complaining witness who initiates a prosecution and procures the issuance of an arrest warrant has only a qualified immunity at common law . . . ." Id.; see also *Malley* v. *Briggs*, 475 U.S. 335, 340, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) (observing that, at common law, complaining witnesses entitled to qualified, not absolute, immunity); *Flanagan* v. *McLane*, 87 Conn. 220, 223–24, 87 A. 727 (1913) (qualified privilege applicable to defendant's statement to town constable accusing plaintiff of theft). In explaining the rule that statements of a complaining witness are afforded qualified immunity rather than absolute immunity, we stated that, in such circumstances, there is no direct nexus between the statements and any subsequent criminal proceeding because "the [fact-finding] process of a tribunal [is not] directly affected." *Petyan* v. *Ellis*, supra, 252. The issue presented in this case is whether, consistent with our dictum in *Petyan*, the defendants' statements to the police are entitled only to qualified immunity, or whether those statements are so inextricably a part of a judicial proceeding that we

should recognize an absolute privilege for such statements. In other words, we must decide whether this case is governed by the common-law rule that statements made to the police in connection with a criminal investigation are qualifiedly privileged, or whether such statements fall within the common-law doctrine that affords an absolute privilege to communications made in the course of judicial proceedings. For the reasons that follow, we conclude that the defendants' statements are subject to a qualified privilege.[12]

---

[12] We thus reject the distinction that the trial court made between a "complaining" witness, that is, a witness characterized by the trial court as one "whose report triggered the criminal investigation and prosecution of the plaintiff," and any other person providing information of criminal misconduct to the police, including those who, like the defendants in the present case, are sought out by the police. In the trial court's view, statements that a complaining witness makes to the police are entitled to qualified immunity, whereas the same statements made by any other person are protected by absolute immunity. Because the police depend heavily on information from the public to investigate and solve crimes, statements to the police concerning alleged criminal misconduct have been granted a privilege for the purpose of encouraging the public to make such information available to the police. The policy underlying the privilege applicable to those statements is the same regardless of whether the statements are volunteered by a person seeking to press criminal charges against the alleged perpetrator or are obtained from a person with no interest in initiating a criminal case. See generally 3 Restatement (Second), Torts § 584, introductory note (1977) (qualified privilege "arise[s] out of the particular occasion upon which the defamation is published" and is "based upon a public policy that recognizes that it is desirable that true information be given whenever it is reasonably necessary for the protection of the actor's own interests, the interests of a third person or certain interests of the public"). In other words, regardless of whether a statement to the police may be characterized as triggering a criminal investigation or furthering a preexisting one, and regardless of whether the statement was obtained by the police from a reluctant witness or from a person intent on having a prosecution initiated, the policy considerations underlying the privilege are the same, namely, to encourage witnesses to cooperate with law enforcement personnel in the discharge of their investigative responsibilities. See W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 115, p. 830 (qualified privilege applicable to "communications made to those who may be expected to take official action of some kind for the protection of some interest of the public" and, thus, "private citizens . . . are privileged to give information to proper authorities for the prevention or detection of crime"); 2 R. Smolla, Defamation (2d Ed. 2007) § 8:58, pp.

The plaintiff claims that the trial court incorrectly determined that the statements that the defendants made to Trooper Taylor in connection with his criminal investigation were made in the course of a judicial proceeding. In essence, the plaintiff contends that the investigatory stage of a criminal prosecution is antecedent to and separate from any subsequent judicial proceeding. The defendants maintain that their statements were made in the course of a judicial proceeding because the police investigation was integral to, and undertaken in reasonable anticipation of, the subsequent criminal proceeding. According to the defendants, the fact that the investigation was conducted in advance of any formal court hearing or proceeding is insufficient reason to treat their statements to the police as qualifiedly, rather than absolutely, privileged.[13] Indeed, as the defendants note, the Restatement (Second) of Torts provides that even communications that are preliminary to a proposed judicial proceeding are abso-

8-39 through 8-40 ("A conditional privilege exists to communicate information to public officials relevant to the discharge of their official duties in the public interest. The privilege embraces a wide spectrum of communications, including reports to law enforcement or authorities concerning the prevention or detection of crime . . . ."). Thus, as a general rule, the nature of the privilege applicable to statements made to the police concerning criminal misconduct will not depend either on the circumstances under which the information is provided or on the motive or interest of the person providing the information.

[13] In support of their claim, the defendants rely on § 588 of the Restatement (Second) of Torts, which provides that "[a] witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." 3 Restatement (Second), Torts § 588, p. 250 (1977). The defendants also rely on the commentary to § 588, which provides that, "[a]s to communications preliminary to a proposed judicial proceeding, the rule stated in this [s]ection applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." Id., comment (e), p. 251.

lutely privileged if they bear "some relation to the proceeding." 3 Restatement (Second), Torts § 588, p. 250 (1977).

"[A]bsolute immunity in defamation . . . presents a conflict or antinomy between two principles equally regarded by the law—the right of the individual, on one hand, to enjoy his reputation unimpaired by defamatory attacks, and, on the other hand, the necessity, in the public interest, of a free and full disclosure of facts in the conduct of the legislative, executive and judicial departments of government." V. Veeder, "Absolute Immunity in Defamation: Judicial Proceedings," 9 Colum. L. Rev. 463 (1909). With respect to statements made in the course of a judicial proceeding, it is widely accepted that "the public's interest in the unhampered operation of the government, when exercising [its judicial] functions, outweighs an individual's interest in the preservation of reputation." (Internal quotation marks omitted.) *DeLong* v. *Yu Enterprises, Inc.*, 334 Or. 166, 171, 47 P.3d 8 (2002). Accordingly, we consistently have held that a statement is absolutely privileged if it is made in the course of a judicial proceeding and relates to the subject matter of that proceeding. E.g., *Hopkins* v. *O'Connor*, supra, 282 Conn. 830–31; *DeLaurentis* v. *New Haven*, supra, 220 Conn. 264; *Petyan* v. *Ellis*, supra, 200 Conn. 245–46.

Although the general rule appears to be straightforward, it is not always easy to determine whether a statement has been made in the course of a judicial proceeding. It is true, as this court recently has observed, that "[t]he scope of privileged communication extends not merely to those made directly to a tribunal, but also to those preparatory communications that may be directed to the goal of the proceeding." *Hopkins* v. *O'Connor*, supra, 282 Conn. 832. This court never has decided, however, whether statements made to the police in connection with a criminal investigation

properly are considered "preparatory" to the criminal judicial proceeding that necessarily follows the filing of any formal charges upon the conclusion of the investigation. Because such statements generally are made in contemplation of a possible criminal prosecution, it reasonably may be maintained that they are made in furtherance of a judicial proceeding and, therefore, should be subject to an absolute privilege. On the other hand, it credibly may be argued that a statement obtained by the police in connection with a criminal investigation is so far removed or attenuated from any subsequent judicial proceeding that the statement should not be treated as preparatory to that proceeding.

Ultimately, however, the issue is whether the public interest is advanced by affording such statements absolute immunity, or whether qualified immunity is the preferable alternative. Indeed, this court candidly has observed that, "in determining whether a statement is made in the course of a judicial proceeding, it is important to consider whether there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides." (Internal quotation marks omitted.) Id., 839. In other words, "whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests." *Rioux* v. *Barry*, 283 Conn. 338, 346, 927 A.2d 304 (2007). In weighing those considerations, we are mindful of the fact that "[a]bsolute immunity . . . is strong medicine . . . ." (Internal quotation marks omitted.) *Carrubba* v. *Moskowitz*, 274 Conn. 533, 540, 877 A.2d 773 (2005).

We agree with the Supreme Court of Florida that "a qualified privilege is sufficiently protective of [those] wishing to report events concerning crime . . . . There is no benefit to society or the administration of justice in protecting those who make intentionally false and malicious defamatory statements to the police. The

counceravailing harm caused by the malicious destruction of another's reputation by false accusation can have irreparable consequences. . . . [T]he law should provide a remedy in [such] situations . . . ." (Citation omitted; internal quotation marks omitted.) *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992); accord *Caldor, Inc. v. Bowden*, 330 Md. 632, 653, 625 A.2d 959 (1993); see also *Pope v. Motel 6*, 121 Nev. 307, 114 P.3d 277, 283 (2005) ("[t]he competing public policies of safeguarding reputations and full disclosure are best served by a qualified privilege"); *DeLong v. Yu Enterprises, Inc.*, supra, 334 Or. 173 ("a citizen making an informal statement to police should not enjoy blanket immunity from action; instead, such statements should receive protection only if they were made in good faith, to discourage an abuse of the privilege"). In view of the potentially disastrous consequences that may befall the victim of a false accusation of criminal wrongdoing, we are unwilling to afford absolute immunity to such statements. We also are persuaded that qualified immunity affords sufficient protection for those who cooperate with the police. Indeed, as we have explained, statements to police investigators long have been afforded qualified immunity; e.g., *Petyan v. Ellis*, supra, 200 Conn. 252; *Flanagan v. McLane*, supra, 87 Conn. 223–24; and there is nothing to suggest that that level of protection has operated as a deterrent to those whose assistance is needed by law enforcement.

Our conclusion comports with the rule adopted by a majority of the states that have addressed this issue. See, e.g., *Fridovich v. Fridovich*, supra, 598 So. 2d 67–68 & n.4 (surveying case law of various jurisdictions); *Caldor, Inc. v. Bowden*, supra, 330 Md. 653–54 (same); *Toker v. Pollak*, 44 N.Y.2d 211, 220, 376 N.E.2d 163, 405 N.Y.S.2d 1 (1978) ("Far removed from a judicial proceeding, however, is a communication made by an individual to a law enforcement officer such as a police-

man. The majority of [s]tates afford a communication of this nature a qualified privilege, rather than absolute immunity."); see also annot., 140 A.L.R. 1466, 1471 (1942) ("[although] in a few cases the view has been expressed that a communication to an officer respecting the commission of a crime is absolutely privileged, at least [when] made to a prosecuting attorney . . . the majority of the cases expressly dealing with this question hold that the privilege is qualified or conditional, not absolute" [citation omitted]); 50 Am. Jur. 2d 631, Libel and Slander § 275 (2006) ("[f]or defamation purposes, only a qualified privilege attaches to reports made to law enforcement authorities for investigation"); 2 R. Smolla, Defamation (2d Ed. 2007) § 8:58, p. 8-40 ("[t]he majority position appears to embrace only a qualified privilege [for reports made to the police]"). Although some states have concluded that the statements of complaining witnesses are subject to absolute immunity; e.g., *Starnes* v. *International Harvester Co.*, 184 Ill. App. 3d 199, 203–205, 539 N.E.2d 1372, appeal denied, 127 Ill. 2d 642, 545 N.E.2d 131 (1989); *Correllas* v. *Viveiros*, 410 Mass. 314, 323–24, 572 N.E.2d 7 (1991); *McGranahan* v. *Dahar*, 119 N.H. 758, 769, 408 A.2d 121 (1979); we disagree that an absolute privilege for such statements is warranted.

In concluding that the defendants' statements were absolutely privileged, the trial court explained that its conclusion was dictated by this court's analysis and holding in *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 78. In *Craig*, the plaintiff, Steven Craig, a police officer with the Hartford police department (police department), brought a defamation action against the named defendant, Stafford Construction, Inc. (Stafford), among others, claiming that certain allegations that one of Stafford's employees had made regarding Craig in a citizen complaint filed with the police department's internal affairs division (division)

were false and malicious, and had caused Craig emotional and economic harm. Id., 81–82. The trial court granted Stafford's motion for summary judgment after determining that the allegations were absolutely privileged because they had been made in the course of a quasi-judicial proceeding, namely, the division's internal investigation of the citizen complaint against Craig. See id., 82. On appeal, we agreed with the trial court that the proceedings conducted by the division were quasi-judicial in nature and, therefore, that the allegedly defamatory statements were subject to an absolute privilege. Id., 88, 90.

Contrary to the conclusion of the trial court in the present case, *Craig* does not control the outcome of this case. In *Craig*, the allegedly defamatory statements were published in a complaint that triggered a quasi-judicial proceeding. It is well established that allegations contained in a complaint in a quasi-judicial proceeding, like allegations contained in a complaint in a judicial proceeding, are absolutely privileged. See footnote 6 of this opinion. Accordingly, the statements at issue in *Craig* fell squarely within the privilege for statements made in the course of a quasi-judicial proceeding.

More importantly, there are sound public policy reasons to distinguish between the level of protection to be afforded citizen complaints of police impropriety, on the one hand, and statements to law enforcement personnel concerning suspected criminal activity, on the other. Because of the inherent imbalance of power that defines the relationship between a citizen and a police officer, it is imperative that complainants alleging police misconduct be afforded unfettered access to the administrative disciplinary process established to investigate such allegations. As we observed in *Craig*, "citizen complaints of alleged police misconduct and the disciplinary procedures that follow from those complaints, serve a public function of vital importance by

providing a mechanism through which abuses [of power] may be reported to the proper authorities, and the abusers held accountable. . . . The viability of a democratic government requires that the channels of communication between citizens and their public officials remain open and unimpeded. Were complaints such as [the one regarding Craig] not absolutely privileged, the possibility of incurring the costs and inconvenience associated with defending a defamation suit might well deter a citizen with a legitimate grievance from filing a complaint. . . . [T]herefore . . . the possible harm a false brutality complaint may cause to a law-enforcement officer's reputation, despite the procedural safeguards provided by [the regulatory scheme governing disciplinary proceedings], is outweighed by the public's interest in encouraging the filing and investigation of valid complaints." (Citation omitted; internal quotation marks omitted.) *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 92, quoting *Miner* v. *Novotny*, 304 Md. 164, 176, 498 A.2d 269 (1985).

By contrast, informal reports of suspected criminal misconduct do not implicate the imbalance of power between citizens and governmental authorities and, therefore, do not involve our democratic values to the same degree as formal allegations of police abuse, brutality or other official wrongdoing. Although the detection of crime and the apprehension of criminals are extremely important goals, their achievement does not outweigh the harm that is likely to inure to an individual who is falsely and maliciously accused of criminal misconduct. Even after being cleared of wrongdoing, the victim of a false criminal accusation may suffer severe and long lasting emotional harm and damage to his reputation. Moreover, although an action for malicious prosecution may lie to remedy a false and malicious accusation of criminal misconduct, the "stringent requirements" of the tort; *Rioux* v. *Barry*, supra, 283

Conn. 347; may serve as a disincentive to those wishing to seek civil recourse. Finally, because the reporting of "false information [to the police] necessarily interferes with the intelligent exercise of official discretion"; id., 346; false reports invariably waste limited law enforcement resources and deflect police time and resources away from the investigation and detection of real crime.

The Maryland Court of Appeals has drawn the same distinction between citizen complaints that trigger an internal affairs investigation, as in *Craig*, and statements made to the police in connection with a criminal investigation, as in the present case. In *Caldor, Inc.* v. *Bowden*, supra, 330 Md. 651–54, the court concluded that, although citizen complaints of police misconduct are absolutely privileged in Maryland under *Miner* v. *Novotny*, supra, 304 Md. 164, reports to law enforcement personnel concerning possible criminal activity are subject only to a qualified privilege. In arriving at this conclusion, the court explained: "*Miner* is easily distinguishable . . . . *Miner* conferred an absolute privilege for a sworn complaint which initiated law enforcement disciplinary proceedings. . . . The public policy reasons for extending the absolute judicial proceedings privilege to the sworn complaint in *Miner* are far less compelling when applied to the oral accusation volunteered to the police by the defendants in [*Caldor, Inc.*]. . . . We do not believe public policy is violated by requiring that citizens who report criminal activities to the police do so in good faith. Those who maliciously volunteer false accusations of criminal activity to the police should not be granted absolute immunity. Although we do not wish to discourage the reporting of criminal activity, we also do not wish to encourage harassment, or wasting of law enforcement resources, by investigations of false, maliciously made complaints. . . . Accordingly, we see no compelling public policy reason to extend to [the] defendants [in *Caldor, Inc.*]

the absolute judicial proceedings privilege which, for good reason, protects even the evil disposed and malignant slanderer." (Citations omitted; internal quotation marks omitted.) *Caldor, Inc.* v. *Bowden*, supra, 652–53.

For the foregoing reasons, we conclude that the defendants' allegedly false and malicious statements to the police are qualifiedly, rather than absolutely, privileged.[14] Accordingly, the trial court improperly

[14] Our recent opinion in *Hopkins* v. *O'Connor*, supra, 282 Conn. 821, does not require a different result. In *Hopkins*, the plaintiff, Eric T. Hopkins, brought an action against the defendant, Michael J. O'Connor, a police officer, alleging, inter alia, that O'Connor, after causing Hopkins to be transported to a local hospital for a psychiatric evaluation on the basis of information that Hopkins was suicidal, falsely and maliciously had defamed Hopkins in an official police report detailing the incident. Id., 823. O'Connor filed a motion for summary judgment, claiming that the allegedly defamatory statements contained in the incident report were absolutely privileged because O'Connor had prepared the report in connection with the statutory scheme governing involuntary commitments and, therefore, that the statements contained in the report were part of a judicial proceeding. Id., 825. The trial court rejected O'Connor's contention that the statements had been made in the course of a judicial proceeding and denied the motion for summary judgment. Id., 827. On appeal, we affirmed the decision of the trial court to deny the motion for summary judgment, albeit on a different ground. See generally id., 845–46, 848. Specifically, we concluded that, although O'Connor's statements ordinarily would be absolutely privileged because they had been made in the course of a judicial proceeding, namely, a commitment proceeding conducted pursuant to General Statutes § 17a-503 (a); id., 831, 837–38; a second statutory provision, namely, General Statutes § 17a-504, which imposes criminal sanctions on "[a]ny person who wilfully and maliciously causes . . . any person who does not have psychiatric disabilities to be committed to any hospital for psychiatric disabilities," manifested a legislative policy inconsistent with the common-law absolute privilege that otherwise would have applied to O'Connor's statements. *Hopkins* v. *O'Connor*, supra, 844–45. In concluding that O'Connor's statements were part of a judicial proceeding, however, we emphasized the unique nature of the commitment scheme involved and underscored the fact that, in view of the "nature of the function assigned to the police officer [under our statutory commitment scheme] and the relationship of the statements to the performance of that function," O'Connor had been "serving less in a law enforcement capacity than in a health and safety capacity . . . ." Id., 848 n.12. We therefore counseled against "any extension of the limited holding in [the] case to other contexts [in which] the competing consideration[s] may not yield the same result in the balance." Id. For the reasons

granted the defendants' summary judgment motion.[15]

that we have enumerated, the policy considerations relevant in the present case militate in favor of a different result than we reached in *Hopkins*.

[15] As alternate grounds for affirmance, the defendants also claim that their statements are entitled to absolute immunity because (1) the statements were made in the course of a quasi-judicial proceeding, namely, the department's own internal investigation of the March 27, 2002 incident, (2) such immunity would promote the public policy underlying the governor's executive order concerning workplace violence in state employment and the state's violence in the workplace prevention policy, both of which require state employees to report incidents of workplace violence to their supervisor, the police or both, and (3) the plaintiff conceded in the trial court that the present case is governed by our holding in *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 78. We reject each of these claims. With respect to the defendants' first contention, even if we assume, arguendo, that the department's internal investigation constituted a quasi-judicial proceeding, the statements at issue in the present case are those that the defendants made to the state police, not the separate statements that the defendants made to department investigators. Because the statements that the defendants made to the department investigators are not the subject of the plaintiff's action, they are not relevant to our determination of whether the defendants' statements to the police are subject to an absolute privilege. We do not consider the defendants' second claim because it was not raised in the trial court. See, e.g., *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 82, 848 A.2d 395 (2004) (this court ordinarily will not entertain claim on appeal that has not been raised in trial court); see also Practice Book § 60-5 ("[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial"). Although the defendants made reference to the governor's executive order concerning workplace violence in state employment and the state's violence in the workplace prevention policy in their memoranda in support of their motion for summary judgment, those references were made in connection with their argument that their allegedly false and malicious statements were legally insufficient to state a claim either for defamation or for intentional infliction of emotional distress. Finally, we reject the defendants' third claim because our review of the record indicates that, although counsel for the plaintiff did acknowledge that *Craig* and the present case have certain similarities, the plaintiff's counsel immediately clarified that his comment was not intended as a concession that *Craig* was controlling.

The defendants also assert that the judgment of the trial court may be affirmed on the alternate ground that the plaintiff has failed to demonstrate facts sufficient to support his claim that the defendants' statements to the police were false and malicious. Because the defendants raised this claim for the first time on appeal at oral argument before this court, we decline to review it. See, e.g., *West Farms Mall, LLC* v. *West Hartford*, 279 Conn.

The judgment is reversed as to the counts of defamation and intentional infliction of emotional distress and the case is remanded for further proceedings on those counts; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.

1, 11 n.6, 901 A.2d 649 (2006) ("[i]t is well settled that claims on appeal must be adequately briefed, and cannot be raised for the first time at oral argument before the reviewing court" [internal quotation marks omitted]).