******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JAY M. TYLER ET AL. *v*. RICHARD TATOIAN
(AC 37799)

Lavine, Sheldon and Mullins, Js.

*Argued November 19, 2015—officially released March 22, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Bruce D. Tyler*, self-represented, and *Jay M. Tyler*, self-represented, the appellants (plaintiffs).

*Kathleen Eldergill*, for the appellee (defendant).

*Opinion*

SHELDON, J. The issue in this case is whether the litigation privilege, also referred to as absolute immunity,[1] shields a defendant from claims of fraud and violations of the Connecticut Unfair Trade Practices Act (CUTPA)[2] arising from communications made during the course of a prior litigation between the parties. The plaintiffs, Jay M. Tyler and Bruce D. Tyler, appeal from the trial court's judgment granting the defendant Richard Tatoian's motion to dismiss. The plaintiffs are brothers who were named, inter alios, as beneficiaries of their mother's trust, for which the defendant, an attorney, served as trustee. The alleged mismanagement of the trust by the defendant was the subject of a prior litigation between these parties, and on the basis of various communications made by the defendant in that prior litigation, the plaintiffs brought this action alleging fraud and violations of CUTPA. The defendant filed a motion to dismiss, asserting that the litigation privilege applied to his statements because they were made in the course of the prior litigation, and thus that he was absolutely immune. The trial court agreed with the defendant and dismissed the plaintiffs' complaint in its entirety. On appeal, the plaintiffs claim error in the trial court's application of absolute immunity to their claims of fraud and violations of CUTPA, which they assert fall under an exception to absolute immunity for causes of action alleging an improper use of the judicial system. We affirm the judgment of the trial court.

For purposes of this appeal, we must take as true the following facts as set forth in the plaintiffs' complaint. See *Rioux* v. *Barry*, 283 Conn. 338, 341, 927 A.2d 304 (2007) ("[b]ecause in this appeal we review the trial court's ruling on a motion to dismiss, we take the facts to be those alleged in the complaint, construing them in a manner most favorable to the pleader" [internal quotation marks omitted]). The plaintiffs' mother, Ruth Tyler, established a trust naming the plaintiffs as beneficiaries and the defendant as trustee. Following their mother's death, the plaintiffs commenced an action[3] against the defendant in early 2011, alleging, inter alia, that he had mismanaged the trust by failing to diversify the trust's assets.[4] The defendant testified during a deposition in that case that he had relied on the advice of an investment advisor in deciding not to diversify the trust assets. In response to that testimony, the plaintiffs requested that the defendant pursue a claim against the advisor to recover for the losses of the trust pursuant to General Statutes § 45a-541i.[5] The defendant declined this request, and the court likewise denied the plaintiffs' motion to compel the defendant to seek recovery from the advisor. The plaintiffs thus attempted to recover from the investment advisor directly by citing in the advisor and amending their complaints, which the court ultimately dismissed for lack of standing. Upon that

dismissal, the plaintiffs amended their complaints against the defendant to include counts seeking damages for his failure to pursue a claim against the advisor to recover for the losses of the trust. In order to prevail on their claims, the plaintiffs had to establish that the defendant relied on the advice of the investment adviser in deciding not to diversify the trust funds. At trial in October, 2013, the defendant testified that he had not relied on the advisor's advice in deciding not to diversify the trust assets. The jury returned a verdict for the defendant.

Following the jury's verdict against the plaintiffs in the initial action, the plaintiffs commenced a second action against the defendant on October 28, 2014, in the judicial district of Tolland, alleging fraud and violations of CUTPA. In their claim of fraud, the plaintiffs alleged that the defendant's differing testimony at his deposition and at trial constituted a fraud that caused them to waste resources in pursuing claims against the investment advisor and the defendant for the losses of the trust's assets, and that such fraud constituted an abuse of the legal system. In the CUTPA count, the plaintiffs alleged that the defendant engaged in unfair business practices by (1) "perpetrating a fraud on the plaintiffs by making false statements under oath"; (2) intimidating Jay Tyler by sending him a letter stating that "unless he withdrew his claims 'immediately' the costs incurred by him and the trust '[would] result in a claim against him for the cost of defenses, including legal fees' "; and (3) seeking court approval for accountings of the trust that included exorbitant fees when he had no fee agreement with Ruth Tyler.

The defendant filed a motion to dismiss the plaintiffs' complaint, claiming that the defendant's communications in the initial case were made during the course of judicial proceedings and were thus protected by the litigation privilege. The court granted the motion, ruling that "[t]he defendant's statements made in court and in a deposition in that prior action are absolutely privileged under the legal doctrine known as the 'litigation privilege.' *Simms* v. *Seaman*, 308 Conn. 523 [69 A.3d 880] (2013); *Rioux* v. *Barry*, [supra] 283 Conn. 338 . . . . Because the plaintiffs' action is premised wholly on statements made by the defendant in connection with judicial proceedings, and those statements are absolutely privileged, this case is dismissed." The plaintiffs filed a motion to reargue the motion to dismiss, which the court granted. The court denied the relief requested but clarified its initial dismissal of the complaint as follows: "[T]he court clarifies that its prior order granting the defendant's motion to dismiss also applies to count two of the complaint, which relies upon a litigation related letter, which is attached to the complaint. See *Hopkins* v. *O'Connor*, 282 Conn. 821, 832, 925 A.2d 1030 (2007) ('[t]he scope of privileged communication extends not merely to those made

directly to a tribunal, but also to those preparatory communications that may be directed to the goal of the proceeding') . . . ."

The plaintiffs claim that the trial court erred in not recognizing the exception from absolute immunity for cases in which the plaintiff alleges that the defendant improperly used the judicial system. The defendant responds that all of his statements were made in the course of a judicial proceeding, and that the limited exception for claims alleging an improper use of the judicial system does not apply.

"Because the resolution of this claim requires us to consider the trial court's ultimate legal conclusion and its resulting judgment of dismissal, our review is de novo." *Rioux* v. *Barry*, supra, 283 Conn. 343. "As the doctrine of absolute immunity concerns a court's subject matter jurisdiction . . . we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . The question before us is whether the facts as alleged in the pleadings, viewed in the light most favorable to the plaintiff, are sufficient to survive dismissal on the grounds of absolute immunity." (Citations omitted; internal quotation marks omitted.) *Perugini* v. *Giuliano*, 148 Conn. App. 861, 873, 89 A.3d 358 (2014).

"It is well settled that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." (Internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 830–31. The privilege extends beyond statements made during a judicial proceeding to "preparatory communications that may be directed to the goal of the proceeding." Id., 832. The litigation privilege was initially applied to bar claims of defamation. See *Simms* v. *Seaman*, supra, 308 Conn. 531–40 (detailing history of litigation privilege). More recently, however, our Supreme Court has expanded the scope of immunity afforded to statements made during the course of a judicial proceeding beyond defamation. See, e.g, id., 568–69 ("attorneys are protected by the litigation privilege against claims of fraud for their conduct during judicial proceedings"); *Rioux* v. *Barry*, supra, 283 Conn. 350 ("absolute immunity does bar the plaintiff's claim of intentional interference with contractual or beneficial relations"); *Petyan* v. *Ellis*, 200 Conn. 243, 255, 510 A.2d 1337 (1986) (absolute immunity bars claim of intentional infliction of emotional distress based on allegedly defamatory statement).

In expanding the scope of the litigation privilege, however, our Supreme Court has "recognized a distinction between attempting to impose liability upon a participant in a judicial proceeding for the words used therein and attempting to impose liability upon a litigant

for his improper use of the judicial system itself. . . . In this regard, we have refused to apply absolute immunity to causes of action alleging the improper use of the judicial system." (Citation omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 629, 79 A.3d 60 (2013); see also, e.g., id., 625–26 (litigation privilege did not shield claim by employee against employer alleging that employer had brought action against employee solely in retaliation for employee exercising his rights under Workers' Compensation Act); *Rioux* v. *Barry*, supra, 283 Conn. 343 ("in the context of a quasi-judicial proceeding, absolute immunity does not attach to statements that provide the ground for the tort of vexatious litigation"); *Mozzochi* v. *Beck*, 204 Conn. 490, 495, 529 A.2d 171 (1987) ("an attorney may be sued for misconduct by those who have sustained a special injury because of an unauthorized use of legal process").

According to our Supreme Court, "whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests." *Rioux* v. *Barry*, supra, 283 Conn. 346. Accordingly, in *Rioux*, our Supreme Court looked to the following factors to determine whether absolute immunity barred claims of vexatious litigation or intentional interference with contractual or beneficial relations: (1) whether "the underlying purpose of absolute immunity applies just as equally to [that] tort as it does to the tort of defamation"; (2) whether "[that] tort . . . contain[s] within it the same balancing of relevant interests that are provided in the tort of vexatious litigation"; (3) whether "the elements of [that tort] . . . provide the same level of protection against the chilling of a witness' testimony as do the elements of vexatious litigation"; and (4) whether "[that] tort is more like defamation than vexatious litigation." (Citations omitted.) Id., 350–51; see also *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 622 n.5.

However, in *MacDermid, Inc.*, our Supreme Court clarified that "the factors considered in *Rioux* . . . are simply instructive. In *Rioux*, we emphasized that whether and what form of immunity applies in any given case is a matter of policy that requires a balancing of interests. . . . We also observed that, in previous cases that had presented a question of the applicability of the doctrine of absolute immunity, we applied the general principles underlying that doctrine to the particular context of those cases. . . . Furthermore, the cases following *Rioux* have not relied exclusively or entirely on the factors enumerated therein, but instead have considered the issues relevant to the competing interests in each case." (Citations omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, supra, 310 Conn. 630–31.

In examining the competing interests and public policies at stake, our Supreme Court has focused on the

need to ensure candor from all participants in the judicial process. See, e.g., id., 628 ("in expanding the doctrine of absolute immunity to bar claims beyond defamation, this court has sought to ensure that the conduct that absolute immunity is intended to protect, namely, participation and candor in judicial proceedings, remains protected regardless of the particular tort alleged in response to the words used during participation in the judicial process"); *Gallo* v. *Barile*, 284 Conn. 459, 466, 935 A.2d 103 (2007) ("The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . The rationale underlying the privilege is grounded upon the proper and efficient administration of justice. . . . Participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of [actions seeking damages for statements made by such participants in the course of the judicial proceeding]. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial . . . proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit." [Citation omitted; internal quotation marks omitted.]); *DeLaurentis* v. *New Haven*, 220 Conn. 225, 264, 597 A.2d 807 (1991) ("[w]itnesses and parties to judicial proceedings must be permitted to speak freely, without subjecting their statements and intentions to later scrutiny by an indignant jury, if the judicial process is to function").

In accord with the stated public policy of ensuring candor in judicial proceedings, the court in *Petyan* v. *Ellis*, supra, 200 Conn. 250, 252, held that an employer's statements made to the state labor department during a dispute over the employee's eligibility for unemployment compensation benefits were privileged from claims for libel and intentional infliction of emotional distress. In holding that the employer's statements were protected by the litigation privilege, our Supreme Court recognized that "the dictates of public policy require that an employer involved in an unemployment compensation proceeding be able to state candidly his or her reasons for terminating an employee as long as the employer's statement bears a reasonable relation to the purpose of the proceeding. Otherwise employers might be reluctant to respond to the employment security division at all or their reply might be colored by fear of subsequent litigation or liability." Id., 250–51.

Our Supreme Court also has recently examined whether absolute immunity barred a claim of fraud, albeit in the context of whether it barred the claim against the attorneys of a party opponent who allegedly had concealed their client's true financial status during alimony proceedings. See *Simms* v. *Seaman*, supra, 308

Conn. 525–26. In deciding that claims of fraud against attorneys are protected by the litigation privilege, it explained: "We reach this conclusion because fraudulent conduct by attorneys, while strongly discouraged, (1) does not subvert the underlying *purpose* of a judicial proceeding, as does conduct constituting abuse of process and vexatious litigation, for which the privilege may not be invoked, (2) is similar in essential respects to defamatory statements, which are protected by the privilege, (3) may be adequately addressed by other available remedies, and (4) has been protected by the litigation privilege in federal courts, including the United States Supreme Court and the Second Circuit Court of Appeals, for exactly the same reasons that defamatory statements are protected." (Emphasis in original.) Id., 545–46.

With this history and precedent in mind, we conclude that absolute immunity bars the plaintiffs' claim of fraud against the defendant. Although not all of the reasoning in *Simms* applies when the person invoking the privilege is not representing a party as an attorney, the underlying policy and history of the privilege lead us to conclude that it extends to bar claims of fraud against a party opponent. It is precisely this type of communication that the litigation privilege was intended to protect because the benefit of encouraging defendants to speak candidly in judicial proceedings outweighs the risk of a defendant abusing the privilege by lying under oath. See *Gallo* v. *Barile*, supra, 284 Conn. 466.

Moreover, some of the available remedies discussed by the court in *Simms* would apply when the person accused of fraudulent activity is a party opponent, including "fil[ing] a motion to open the judgment; see, e.g., *Jucker* v. *Jucker*, 190 Conn. 674, 677, 461 A.2d 1384 (1983) ('a judgment . . . may be subsequently opened if it is shown that [it] was obtained by fraud or intentional material misrepresentation')." *Simms* v. *Seaman*, supra, 308 Conn. 552. In addition, as the court in *DeLaurentis* v. *New Haven*, supra, 200 Conn. 264, noted: "While no civil remedies can guard against lies, the oath and the fear of being charged with perjury are adequate to warrant an absolute privilege for a witness' statements. Parties or their counsel who behave outrageously are subject to punishment for contempt of the court. Parties and their counsel who abuse the process by bringing unfounded actions for personal motives are subject to civil liability for vexatious suit or abuse of process." (Footnote omitted.)

Finally, the exception elucidated in *MacDermid, Inc.*, does not apply in this case. The plaintiffs here have alleged fraud, and even though they claim that that fraud constituted an abuse of the legal system, they have not brought a claim against the defendant for abuse of process. The court in *Simms* said: "[A]buse of process claims must allege the improper use of litiga-

tion to accomplish a purpose for which it was not designed. . . . In contrast, a claim of fraud, including the claim that the defendants in the present case deliberately concealed material evidence from the plaintiff and incorrectly portrayed the plaintiff's former spouse as economically disadvantaged, does not require consideration of whether the underlying purpose of the litigation was improper but, rather, whether an attorney's conduct while representing or advocating for a client during a judicial proceeding that was brought for a proper purpose is entitled to absolute immunity." (Citations omitted; internal quotation marks omitted.) *Simms* v. *Seaman*, supra, 308 Conn. 546–47. The defendant here did not use a legal process against the plaintiffs in order to accomplish a purpose for which it was not designed; the defendant merely participated in the process initiated by the plaintiffs. The fact that the plaintiffs characterized the defendant's allegedly fraudulent conduct as an abuse of the legal system does not mean that it falls within the limited exception announced in *MacDermid, Inc.*

The same policy of ensuring candor in the judicial process leads us to conclude that the plaintiffs remaining claims based upon alleged violations of CUTPA are also barred by absolute immunity. The plaintiffs' first claim under CUTPA is based upon the same allegations of fraud alleged in count one, and thus is barred for the same reasons. Their second claim under CUTPA is predicated upon a letter sent by the defendant to Jay Tyler on June 24, 2011. The letter, which was attached to the complaint as an exhibit, relates to the initial action between the parties, and "notifie[s] plaintiff Jay Tyler that unless he withdr[aws] [those] claims 'immediately,' the costs incurred by [the defendant] and the trust 'will result in a claim against him for the cost of defenses, including legal fees.' " The plaintiffs argue that the letter was sent after the commencement of the initial action, and thus cannot be considered a "preliminary" or "preparatory" communication. The plaintiffs are correct that this letter did not precede the service of the writ of summons and complaint in the initial action. However, the letter was published in the course of, and was clearly pertinent to, a judicial proceeding. "[T]he long-standing common law rule [is] that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . Additionally, the court recognized that the absolute privilege that is granted to statements made in furtherance of a judicial proceeding extends to every step of the proceeding until final disposition." (Citation omitted; internal quotation marks omitted.) *Hopkins* v. *O'Connor*, supra, 282 Conn. 826. Finally, their third claim under CUTPA is based upon the defendant's attempt to seek approval from the court for his accounting of the trust. Whether the defendant's attempt was

in writing or oral, which is not clear from the face of the complaint, it was uttered or published in the course of a judicial proceeding, and thus is also barred by the litigation privilege. See id.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Our Supreme Court has said: "The terms absolute immunity and litigation privilege are . . . [interchangeable] . . . . See, e.g., R. Burke, Privileges and Immunities in American Law, 31 S.D. L. Rev. 1, 2 (1985) (defining privilege as a special favor, advantage, recognition or status and immunity as a special exemption from all or some portion of the legal process and its judgment)." (Internal quotation marks omitted.) *Simms* v. *Seaman*, 308 Conn. 523, 525 n.1, 69 A.3d 880 (2013).

[2] General Statutes § 42-110a et seq.

[3] In the prior litigation, Bruce Tyler was named as a defendant; however, he also filed a cross complaint against the defendant alleging identical claims to those in Jay Tyler's complaint.

[4] Additional facts and the procedural history of that case are detailed in *Tyler* v. *Tyler*, 163 Conn. App. 594, A.3d (2016).

[5] General Statutes § 45a-541i provides: "(a) A trustee may delegate investment and management functions that a prudent trustee of comparable skills could properly delegate under the circumstances. The trustee shall exercise reasonable care, skill and caution in: (1) Selecting an agent; (2) establishing the scope and terms of the delegation, consistent with the purposes and terms of the trust; and (3) periodically reviewing the agent's actions in order to monitor the agent's performance and compliance with the scope and terms of the delegation.

"(b) In performing a delegated function, an agent owes a duty to the trustee and to the trust to exercise reasonable care to comply with the scope and terms of the delegation and to exercise the delegated function with reasonable care, skill and caution. An attempted exoneration of the agent from liability for failure to meet such a duty is contrary to public policy and void.

"(c) A trustee who complies with the requirements of subsection (a) of this section is not liable to the beneficiaries or to the trust for the decisions or actions of the agent to whom the function was delegated.

"(d) By accepting the delegation of a trust function from the trustee of a trust that is subject to the law of this state, an agent submits to the jurisdiction of the courts of this state and can be held liable by the courts of this state for any breach of duty arising out of the delegation agreement or the terms of sections 45a-541 to 45a-541*l*, inclusive."