******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NATHAN KRUGER *v.* AVERY GRAUER
(AC 38263)

Lavine, Prescott and Mullins, Js.

*Argued December 12, 2016—officially released June 6, 2017*

(Appeal from Superior Court, judicial district of New
Haven, Wilson, J.)

*Daniel P. Scholfield*, with whom were *Miruna C. Popescu Voiculescu* and, on the brief, *Hugh F. Keefe*, for the appellant (defendant).

*John R. Williams*, for the appellee (plaintiff).

*Opinion*

MULLINS, J. The defendant, Avery Grauer, appeals from the judgment of the trial court denying her motion for summary judgment.[1] The issue in this appeal is whether the court properly concluded that the defendant was not entitled to absolute immunity on the basis of the litigation privilege for reports of child sexual abuse that she made to the Department of Children and Families (department). We conclude that, even if we were to assume, without deciding, that individuals who make such reports were entitled to absolute immunity at common law, the legislature has abrogated that common-law immunity by affording only qualified immunity to those who report abuse or neglect pursuant to General Statutes § 17a-101e (b).[2] Accordingly, we affirm the judgment of the trial court.

A review of the pleadings and the documents submitted in conjunction with the motion for summary judgment reveals the following undisputed facts and procedural history. The plaintiff, a cardiologist, and the defendant, a psychiatrist, formerly were married and are the parents of two minor children. On January 24, 2011, the trial court rendered a judgment dissolving the parties' marriage. As a result of the divorce, the parties had shared custody of their two children. On February 20, 2011, the parties' four year old son purportedly informed the defendant that the plaintiff had "hurt" his "tushie" and had "put a stick" in his "tushie." The defendant did not take any immediate action.

The next day, on February 21, 2011, the parties' son purportedly repeated the allegations to the defendant. The son also told the defendant's boyfriend, Adam Joshua Watsky, about this alleged abuse. Watsky surreptitiously recorded the allegations on his cell phone. The defendant informed Watsky that her son had made similar allegations the day before. Watsky and the defendant thereafter discussed what course of action they should take. Watsky wanted to "make a report to a state agency." The defendant, however, convinced Watsky that they would instead have the parties' son repeat the allegations to his therapist, David Meyers, at his next therapy appointment. They would then seek Meyers' opinion as to whether filing a report was necessary. Later that day, the defendant composed an e-mail describing the son's purported allegations and sent it to Meyers.

The next day, February 22, 2011, at the son's therapy appointment, Meyers conducted an evaluation of the child. The defendant was not present for the evaluation. After the evaluation, however, Watsky, Meyers, and the defendant had a conversation regarding the allegations. As a result of that conversation, Watsky believed that Meyers thought that "follow-up with a state agency was required." Acting on this belief, Watsky filed a report

of suspected child abuse with the department later that day.[3]

Due to the report of suspected abuse, the department scheduled an evaluation of the parties' two children for February 24, 2011. The evaluation consisted of an interview and physical examination of the children, both of which were attended by the defendant at the department's request. In the course of the interview and physical examination, the defendant repeated the son's allegations to department personnel, a police officer, and personnel from Yale-New Haven Hospital's Child Sexual Abuse Clinic (Yale Clinic).

After the department evaluation, the defendant sought a restraining order against the plaintiff on her children's behalf for the pendency of the department's investigation. A three day hearing concerning the restraining order took place between March 9 and March 11, 2011. At the hearing, the defendant testified as to the allegations made by the son. The court, *Abery-Wetstone, J.*, however, dismissed the restraining order application after concluding that the defendant's testimony was not credible.

After the March, 2011 restraining order hearing, the department closed its investigation. The department concluded that the allegations against the plaintiff were unsubstantiated.

Thereafter, on February 13, 2013, the plaintiff commenced the present action, seeking damages from the defendant for "falsely and maliciously accus[ing] the plaintiff of sexually assaulting their four year old son." The plaintiff's operative complaint contains four different causes of action, all of which arise from the report of sexual abuse that the defendant made to department and Yale Clinic personnel during the department's investigation.[4] Specifically, the complaint sounds in (1) vexatious litigation, (2) defamation, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress.

The defendant filed an answer and a special defense alleging qualified immunity with respect to the claims for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. As to the defamation claim, she also alleged that the statements "were made in truth." The plaintiff filed a reply denying the allegations of the defendant's special defenses.

On December 15, 2014, the defendant filed a motion for summary judgment. The court heard oral argument on the motion on March 30, 2015. The defendant argued that she is entitled to summary judgment on the counts sounding in defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. She contended that those causes of action are barred because she is entitled to absolute immunity

from suit by virtue of the litigation privilege. According to the defendant, she is entitled to absolute immunity for her statements regarding her son's abuse accusations pursuant to the litigation privilege because those statements were made to "appropriate authorities in the course of investigating [the son's] claims of sexual abuse."

The plaintiff filed an objection to the defendant's motion for summary judgment. In his objection, he argued that "the public policy of the state of Connecticut manifestly does not afford immunity, either absolute or qualified, to those who make false reports of child abuse."

In a memorandum of decision filed July 28, 2015, the court denied the defendant's motion for summary judgment. It rejected the defendant's argument that she was entitled to absolute immunity from suit pursuant to the litigation privilege. The court concluded that the legislature "has made clear that a report of suspected child abuse is entitled to only a conditional or qualified privilege . . . ." In so concluding, it cited § 17a-101e (b), which provides in relevant part: "Any person . . . [who] in *good faith*, makes, or in *good faith* does not make . . . [a report of suspected child abuse to the department] . . . shall be immune from any liability, civil or criminal, which might otherwise be incurred or imposed . . . ." (Emphasis added.) Thus, in light of this statute, the court stated that it would "[decline] the defendant's invitation to undermine the existing conditional statutory immunity by recognizing an absolute [immunity] under the common law."[5] This interlocutory appeal followed.

On appeal, the defendant claims that the court improperly determined that the litigation privilege does not entitle her to common-law absolute immunity for the statements that she made to department and Yale Clinic personnel in connection with the department's investigation of her son's alleged sexual abuse. The crux of the defendant's claim is that she is entitled to absolute immunity because affording her absolute immunity advances the policy underlying that doctrine. According to the defendant, the policy underlying absolute immunity "is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." (Internal quotation marks omitted.)

Thus, she argues that the factual circumstances underlying this appeal, i.e., a department investigation of suspected child abuse, presents a situation where the law encourages people to speak freely, even at the expense of immunizing individuals who make false and malicious statements. As support for this argument, the defendant posits that this state has a "robust" policy of protecting children from abuse, which is best effectu-

ated by encouraging individuals to speak freely when reporting suspected child abuse to the department. Consequently, the defendant contends, affording absolute immunity to individuals who report child abuse to the department will encourage individuals to speak freely when making such reports and, therefore, advance the overarching goal of protecting children.

Additionally, the defendant asserts that the trial court erred in concluding that § 17a-101e abrogates the absolute immunity that she contends the common law affords her. Specifically, she argues that the legislature did not intend to abrogate such common-law immunity because the statute fails to state in explicit language that it is abrogating common-law absolute immunity. We are unpersuaded by the defendant's arguments.

We begin by setting forth our standard of review and the relevant law. "Pursuant to Practice Book § 17-49, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Such questions of law are subject to plenary appellate review. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) *Lega Siciliana Social Club, Inc.* v. *St. Germaine*, 77 Conn. App. 846, 848, 825 A.2d 827, cert. denied, 267 Conn. 901, 838 A.2d 210 (2003).

"[T]he doctrine of absolute immunity originated in response to the need to bar persons accused of crimes from suing their accusers for defamation. . . . The doctrine then developed to encompass and bar defamation claims against all participants in judicial proceedings, including judges, attorneys, parties, and witnesses. . . . [T]he purpose of affording absolute immunity to those who provide information in connection with judicial and quasi-judicial proceedings is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . . Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial and quasi-judicial proceedings. This objective would be thwarted if those persons whom the common-law doctrine [of absolute immunity] was intended to protect nevertheless faced the threat of suit." (Citations omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Leonetti*, 310 Conn. 616, 627, 79 A.3d 60 (2013).

"At common law, communications uttered or published in the course of judicial proceedings are [protected by the litigation privilege] so long as they are in some way pertinent to the subject of the controversy.

. . . [Although] the [litigation] privilege . . . is generally applied to pertinent statements made in formal judicial proceedings, [it] also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature. . . . Once it is determined that a proceeding is quasi-judicial in nature, the [litigation] privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition." (Citation omitted; internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, 272 Conn. 776, 787–88, 865 A.2d 1163 (2005).

If asked to decide whether a person is entitled to absolute immunity on the basis of the litigation privilege, "[w]e must first determine whether the proceedings [in question] were [judicial or] quasijudicial in nature. The judicial proceeding to which [absolute] immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." (Internal quotation marks omitted.) *Kelley* v. *Bonney*, 221 Conn. 549, 566, 606 A.2d 693 (1992).

"[Once we have] concluded that the statements of the defendant were made in the context of a judicial or quasi-judicial process, we must next determine whether the alleged defamatory statements were made in the course of that proceeding and whether they related to its subject matter. . . . In making [the] determination [of whether a particular statement is made in the course of a judicial proceeding], the court must decide as a matter of law whether the . . . statements [at issue] are sufficiently relevant to the issues involved in a proposed or ongoing judicial [or quasi-judicial] proceeding, so as to qualify for the privilege. The test for relevancy is generous . . . ." (Citation omitted; internal quotation marks omitted.) *Mercer* v. *Blanchette*, 133 Conn. App. 84, 93–94, 33 A.3d 889 (2012).

Importantly, even if the litigation privilege affords individuals common-law absolute immunity for statements made in the course of a quasi-judicial proceeding, the legislature may abrogate such absolute immunity by statute. See, e.g., *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 787–98. In *Chadha*, the plaintiff, a physician, sued several other physicians for submitting affidavits expressing concerns to the Department of Public Health about his ability to safely practice medicine. Id., 780. The trial court denied the defendants' motion for summary judgment, in which they argued that, because the statements in their affida-

vits were made in the course of a quasi-judicial proceeding, they were entitled to absolute immunity at common law. Id., 781–82. Upon granting review of the defendants' interlocutory appeal, our Supreme Court first determined that the physicians generally would be entitled to absolute immunity at common law because their affidavits were made in the course of a quasi-judicial proceeding. Id., 787.

The court, however, then considered what effect General Statutes §§ 19a-17b and 19a-20 had on such common-law absolute immunity. Id., 790. The court stated: "General Statutes § 19a-17b (b) provides in relevant part that [t]here shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any person who provides testimony, information, records, documents, reports, proceedings, minutes or conclusions to any . . . professional licensing board . . . when such communication is intended to aid in the evaluation of the qualifications, fitness or character of a health care provider *and does not represent as true any matter not reasonably believed to be true. . . .* General Statutes § 19a-20 provides in relevant part that [n]o member of any board or commission . . . including a member of a medical hearing panel . . . and no person making a complaint or providing information to any of such boards or commissions or the Department of Public Health as part of an investigation . . . or a disciplinary action . . . shall, *without a showing of malice,* be personally liable for damage or injury to a practitioner arising out of any proceeding of such boards and commissions or department." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 789–90.

On the basis of that statutory language, the court concluded that there is "no dispute that the immunity afforded under §§ 19a-17b and 19a-20 is qualified, rather than absolute, because those provisions expressly except from their purview conduct and statements that are motivated by malice." Id., 790. The court further determined that "the only reasonable interpretation"; id.; of "the plain language" in §§ 19a-17b and 19a-20 is that the legislature "intended to abrogate the common-law absolute immunity applicable to statements made in connection with board proceedings." Id., 796. The court reasoned that there is "no way to give effect both to the qualified immunity that those provisions provide, on the one hand, and to the absolute immunity existing at common law, on the other. . . . To do so would require us to ignore the clear legislative mandate of §§ 19a-17b and 19a-20 that the immunity applicable to statements falling within the ambit of those provisions is qualified and not absolute." (Citation omitted; emphasis omitted.) Id., 790–91.

Critically, the court in *Chadha* also rejected the defendants' contention that "the legislature should not

be deemed to have abrogated the common-law absolute immunity . . . in the absence of express language accomplishing that end." Id., 796. The Supreme Court observed that "[it] never has held that the legislature cannot implicitly supersede the common law." Id. Notwithstanding the fact that the statutes at issue did not expressly abrogate common-law absolute immunity, the court stated that "the plain language of §§ 19a-17b and 19a-20 compels the conclusion that the legislature intended to abrogate the common-law absolute immunity applicable to statements made in connection with board proceedings." Id. Accordingly, the court affirmed the denial of the defendants' motion for summary judgment. Id., 798.

With the appropriate legal framework in mind, we now turn to the present case to determine whether the defendant is entitled to absolute immunity for the report of child abuse she made to the department. Pursuant to that framework, our analysis normally consists of determining whether a department investigation of child abuse allegations is a quasi-judicial proceeding, and, if a department investigation is a quasi-judicial proceeding, whether the defendant's report was a statement made in the course of that proceeding. See, e.g., *Kelley* v. *Bonney*, supra, 221 Conn. 566. For purposes of this appeal, we assume, without deciding, that the defendant has satisfied these requirements and that she generally would have been entitled to absolute immunity at common law for her report to the department.

We also conclude, however, that the absolute immunity we have assumed to exist at common law for individuals making reports to the department has been legislatively abrogated by § 17a-101e. Accordingly, by virtue of this statute, the common-law absolute immunity to which individuals making such reports may have been entitled has been replaced with qualified immunity.[6]

Our determination that § 17a-101e (b) abrogates the absolute immunity that the common law may have afforded to individuals reporting abuse to the department is guided by well established principles. "[Although] the legislature's authority to abrogate the common law is undeniable, we will not lightly impute such an intent to the legislature. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . . Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed. . . . The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the

legal system as the doctrine of stare decisis in relation to case law." (Internal quotation marks omitted.) *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 788–89.

Despite the presumption that legislative action is not in derogation of the common law, we conclude that § 17a-101e (b) expresses a clear legislative intent to abrogate the absolute immunity that the common law may have afforded to individuals who report child abuse to the department. In reaching this resolution, we are guided by our Supreme Court's reasoning in *Chadha*.

Here, as in *Chadha*, we begin our analysis with a review of the language of the relevant statutory provisions. General Statutes § 17a-103 (a) provides in relevant part that any person "having reasonable cause to suspect or believe that any child under the age of eighteen is in danger of being abused, or has been abused or neglected . . . may cause a written or oral report to be made to the Commissioner of Children and Families or the commissioner's representative or a law enforcement agency. . . ." Section 17a-101e (b) provides in relevant part that "[a]ny person . . . [who] in *good faith*, makes . . . the report pursuant to [section] . . . 17a-103 shall be *immune* from *any liability, civil or criminal*, which might *otherwise be incurred or imposed* and shall have the *same immunity* with respect to *any judicial proceeding which results from such report* . . . ." (Emphasis added.)

The parties do not dispute that this language clearly expresses the legislature's intent that individuals who make statements that fall within the purview of § 17a-101e (b) are entitled to qualified immunity rather than absolute immunity. Indeed, it is well established that conditioning immunity on the exercise of good faith is consistent with qualified immunity, not absolute immunity. See, e.g., *Villages, LLC* v. *Longhi*, 166 Conn. App. 685, 702–703, 142 A.3d 1162 (2016) (statute granting immunity to municipal officials "acting in good faith" plainly "affords qualified immunity, rather than absolute immunity" [emphasis omitted; internal quotation marks omitted]). Given that the meaning of the plain language of the statute is not disputed, the issue we must decide is how that language affects the absolute immunity that we have assumed the common law afforded to individuals reporting child abuse to the department. See *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 790 ("The issue presented . . . is not what [the statutes] say; at least with respect to the nature of the immunity provided thereunder, namely, qualified immunity, the pertinent statutory language is unambiguous. The issue that we must decide, rather, is the effect of that language, if any, on the common-law absolute immunity . . . ." [Emphasis omitted.]).

To start, we agree with the trial court's general observation that continuing to recognize absolute immunity

at common law "could make an end run around the existing good faith statutory immunity." Put another way, the statutory immunity and common-law immunity are irreconcilable when applied to persons making reports to the department. It is impossible to give effect both to the qualified immunity provided by § 17a-101e (b) and any purported absolute immunity that may have existed at common law. See *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 790 ("only reasonable interpretation" of statutes affording qualified immunity to individuals who give statements to state medical boards is that they abrogate absolute immunity that common law afforded to such individuals).

Furthermore, affording absolute immunity to individuals who make reports to the department when the legislature has stated expressly that such individuals are entitled to qualified immunity for those reports undoubtedly would thwart the legislature's intent to except from protection individuals who make bad faith reports. "It is axiomatic that we do not interpret a statute in a way that would so blatantly thwart its purpose." *Location Realty, Inc.* v. *Colaccino*, 287 Conn. 706, 727, 949 A.2d 1189 (2008). If the legislature wanted to provide protection to *all* reporters of abuse, then it certainly could have done so. As the statute's plain language indicates, however, it did not. See *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 793 ("[H]ad the legislature wanted to provide absolute immunity to those [whose statements] fall within the ambit of §§ 19a-20 or 19a-17b, it could have done so. It chose not to." [Internal quotation marks omitted.]).

The fact that § 17a-101e (d) also prescribes criminal penalties for anyone who "knowingly makes a false report of child abuse or neglect" is further evidence of the legislature's intent to abrogate any absolute immunity that may have existed at common law. See General Statutes § 17a-101e (d) (imposing $2000 fine, maximum jail sentence of one year, or both, for false report). Our Supreme Court has observed that "it is illogical to punish someone criminally for engaging in certain conduct but protect them civilly absolutely and under all circumstances for the same behavior." (Emphasis in original.) *Hopkins* v. *O'Connor*, 282 Conn. 821, 844, 925 A.2d 1030 (2007) ("we reasonably cannot give effect both to the imposition of criminal liability that [the statute] explicitly provides, on the one hand, and to the absolute immunity existing at common law, on the other").

Finally, we disagree with the defendant's contention that the legislature did not abrogate common-law immunity because it failed to use express language accomplishing that end. As discussed previously, in rejecting a similar argument in *Chadha*, our Supreme Court observed that it "never has [been] held that the legislature cannot implicitly supersede the common law."

*Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 796. Indeed, the statutes at issue in *Chadha* did not state expressly that the legislature was abrogating absolute immunity. See id.; General Statutes § 19a-17b; General Statutes § 19a-20. However, the only "reasonable interpretation"; *Chadha* v. *Charlotte Hungerford Hospital*, supra, 790; of "the plain language of [those statutes compelled] the conclusion that the legislature intended to abrogate the common-law absolute immunity . . . ." Id., 796.

In the present case, we similarly are compelled to conclude that the only reasonable interpretation of § 17a-101e is that it expresses a clear legislative intent to abrogate the absolute immunity that the common law may have afforded to individuals who report child abuse to the department. Thus, as the defendant's statements constitute reports of abuse falling within the purview of § 17a-101e, the trial court properly determined that the defendant was entitled to only the qualified immunity provided by that statute.

Although our interpretation of the plain language in §§ 17a-101e and 17a-103 has led us to conclude that the legislature intended to abrogate the absolute immunity that the common-law immunity may have afforded to individuals reporting abuse to the department, the defendant's public policy arguments are not lost on us. Rather, we ultimately recognize that, by enacting these statutes, the legislature already has performed a careful evaluation and balancing of the important policy considerations surrounding the reporting of suspected child abuse.

Indeed, as the defendant highlights, the legislature has stated expressly: "The public policy of this state is . . . [t]o protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe environment for children when necessary; and for these purposes to require the reporting of suspected child abuse or neglect, investigation of such reports by a social agency, and provision of services, where needed, to such child and family." General Statutes § 17a-101 (a).

Affording absolute immunity in this context surely would, as the defendant suggests, encourage individuals to speak freely in reporting suspected child abuse and, therefore, aid in the overarching goal of protecting the welfare of children. The legislature, however, did not afford such immunity when enacting § 17a-101e. Instead, it determined, as a matter of policy, that there are limits on the methods to be used in pursuing the goal of child protection. Clearly, immunizing individuals who make bad faith reports exceeds the limitations that the legislature has imposed on achieving the goal of

child protection.

To be sure, § 17a-101e reflects the determination that, although child protection is an important goal, its achievement does not outweigh the harms resulting from reports of child abuse that are made in bad faith. That is, by excepting reports made in bad faith from its purview, the statute contemplates and accounts for (1) the harm likely inuring to an individual falsely and maliciously accused of child abuse, and (2) the extent to which false reports waste limited department resources and detract from the investigation of real cases of child abuse. Cf. *Gallo* v. *Barile*, 284 Conn. 459, 473–76, 935 A.2d 103 (2007) ("Although some states have concluded that the statements of complaining witnesses [made to law enforcement] are subject to absolute immunity . . . we disagree that an absolute privilege for such statements is warranted. . . . Although the detection of crime and the apprehension of criminals are extremely important goals, their achievement does not outweigh the harm that is likely to inure to an individual who is falsely and maliciously accused of criminal misconduct. . . . [Moreover] because the reporting of false information [to law enforcement] necessarily interferes with the intelligent exercise of official discretion . . . false reports invariably waste limited law enforcement resources and deflect police time and resources away from the investigation and detection of real crime." [Citations omitted; internal quotation marks omitted.]).

Thus, in deciding that individuals who report abuse to the department are entitled to only qualified immunity rather than absolute immunity, it is clear that the legislature already weighed the pertinent policy considerations in this context. We must follow that legislative mandate. It is well settled that "[our appellate courts] lack the authority to override [such a] valid expression of legislative will . . . ." *Chadha* v. *Charlotte Hungerford Hospital*, supra, 272 Conn. 797. "[T]he primary responsibility for formulating public policy resides in the legislature . . . [and] so, too, does the responsibility for determining, within constitutional limits, the methods to be employed in achieving those policy goals." (Citations omitted.) *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 715, 802 A.2d 731 (2002). "[Our appellate] court[s] [are] precluded from substituting [their] own ideas of what might be a wise provision in place of a clear expression of legislative will." (Internal quotation marks omitted.) *Skindzier* v. *Commissioner of Social Services*, 258 Conn. 642, 661, 784 A.2d 323 (2001). Accordingly, we agree with the trial court's conclusion that "it is not for a court to second-guess the legislature's [express] determination [in § 17a-101e] that a qualified [immunity] adequately advances the relevant public policy."

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "The denial of a motion for summary judgment ordinarily is an interlocutory ruling and, accordingly, not a final judgment for purposes of appeal." (Internal quotation marks omitted.) *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 653, 954 A.2d 816 (2008). "A denial of a motion for summary judgment, however, which had been filed on the basis of a colorable claim of absolute immunity, constitutes an appealable final judgment." (Internal quotation marks omitted.) *Morgan* v. *Bubar*, 115 Conn. App. 603, 608, 975 A.2d 59 (2009).

[2] General Statutes § 17a-101e (b) provides in relevant part: "Any person . . . [who], in good faith, makes . . . the report pursuant to . . . [section] . . . 17a-103 shall be immune from any liability, civil or criminal, which might otherwise be incurred or imposed and shall have the same immunity with respect to any judicial proceeding which results from such report provided such person did not perpetrate or cause such abuse or neglect."

General Statutes § 17a-103 (a) provides in relevant part: "[A]ny . . . person having reasonable cause to suspect or believe that any child under the age of eighteen is in danger of being abused, or has been abused or neglected . . . may cause a written or oral report to be made to the Commissioner of Children and Families or the commissioner's representative or a law enforcement agency. . . ."

[3] The record reflects that Meyers never contacted the department himself.

[4] Although the *defendant* presented evidence of her additional statements to two purported mandated reporters, Watsky and Meyers, the plaintiff's complaint does not seek recovery on the basis of these statements. Instead, the plaintiff refers only to the statements that the defendant made to the department and to Yale Clinic personnel on February 24, 2011, which is undisputedly the date on which the defendant was interviewed by such personnel. Accordingly, we address as a basis for recovery only the statements made to department personnel and the Yale Clinic in connection with the department's investigation of the abuse allegations.

[5] The defendant asserted both absolute immunity and qualified immunity as grounds for summary judgment. The court denied the motion for summary judgment on both grounds. On appeal, however, the defendant challenges the trial court's ruling only with respect to its conclusion regarding absolute immunity.

[6] At oral argument before this court, the defendant contended that her statements did not fall within the scope of § 17a-101e. Specifically, she argued that her statements did not constitute a "report" because she was not the person who initially related the abuse allegations to the department. We are unpersuaded.

First, it is clear that the defendant's statements constituted a "report." Our Supreme Court has construed "report" in this context to have its ordinary dictionary definition. *Manifold* v. *Ragaglia*, 272 Conn. 410, 421–22 n.12, 862 A.2d 292 (2004) (defining report as "[a]n account presented usu[ally] in detail," "[t]o make or present an often official, formal, or regular account of," "[t]o relate or tell about; present," and "to carry back and repeat to another" [internal quotation marks omitted]). Accordingly, we conclude that the defendant's act of relating her son's abuse allegations to the department fits squarely within the definition of "report." See id., 421 ("[physician's] act of describing the result of his examination of the children orally to [a department social worker], followed by his provision of a written account of that examination, clearly falls within the common usage of the term 'report' ").

Second, our Supreme Court has rejected the contention that § 17a-101e applies only to *initial* reporters of child abuse. Id., 422, 424 (§ 17a-101e provides immunity "to secondary reporters of abuse" because statute does not "contain any language that . . . limits [its] application to initial reporters of child abuse" [emphasis omitted]).

The defendant also contended at oral argument that, because Yale Clinic personnel interviewed her at the department's request, they were the department's "agents." On that basis, the defendant claims that her entitlement to absolute immunity applies not only to her statements to department personnel, but also to her statements to Yale Clinic personnel. With this in mind, we conclude that in the limited circumstances of this case, the defendant's statements to Yale Clinic personnel constitute a "report" falling within the scope of § 17a-101e. In other words, because this was a department investigation and Yale Clinic personnel spoke to the defendant only at the behest of the department during its investigation, a report to the Yale Clinic in this very limited context was tantamount to a report to the department.

It logically follows, then, that statements made to Yale Clinic personnel under these limited circumstances should be subject to the same strictures that § 17a-101e imposes on statements made to the department. Nevertheless, notwithstanding the defendant's contention, nothing in this opinion is intended to suggest that Yale Clinic personnel are in fact "agents" of the department.

_____