******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# MODZELEWSKI'S TOWING & STORAGE, INC., ET AL. *v.* GOVERNMENT EMPLOYEES INSURANCE COMPANY ET AL.
## (AC 47933)

Cradle, C. J., and Suarez and DiPentima, Js.

*Syllabus*

The plaintiffs appealed from the trial court's judgment granting, on jurisdictional grounds, motions to dismiss filed by the defendants in their action asserting, inter alia, a claim of defamation through slander. They claimed that the court improperly concluded that the complaints filed against them by the defendants with the Department of Motor Vehicles pursuant to state regulation (§ 14-63-45b) were entitled to absolute immunity under the litigation privilege. *Held*:

The trial court properly granted the defendants' motions to dismiss, as public policy supports the application of the litigation privilege to complaints filed with the Department of Motor Vehicles pursuant to § 14-63-45b of the regulations.

Argued October 23, 2025—officially released March 24, 2026

*Procedural History*

Action to recover damages for, inter alia, tortious interference with business expectancies, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the plaintiff Ye Old Station Auto Body, Inc., et al. withdrew from the action; thereafter, the named plaintiff et al. filed a revised complaint; subsequently, the court, *Ozalis, J.*, granted the defendants' motions to dismiss and rendered judgment thereon, from which the named plaintiff et al. appealed to this court. *Affirmed*.

*Matthew C. Eagan*, for the appellants (named plaintiff et al.).

*Sean Gorton*, pro hac vice, with whom was *Joseph M. Busher, Jr.*, for the appellee (named defendant).

*Ryan J. Roberts*, with whom, on the brief, was *John W. Cannavino, Jr.*, for the appellees (defendant John P. Vaz et al.).

*Opinion*

CRADLE, C. J. The plaintiffs, Modzelewski's Towing & Storage, Inc., Chris' Auto Clinic, LLC, MyHoopty.com, LLC, and Farmington Auto Park, LLC, appeal from the judgment of the trial court rendered in favor of the defendant Government Employees Insurance Company (GEICO) and the individual defendants, John P. Vaz and Patrick Capri, granting the defendants' respective motions to dismiss the action for lack of subject matter jurisdiction.[1] On appeal, the plaintiffs claim that the court improperly concluded that the complaints filed against them by the defendants with the Department of Motor Vehicles (department) pursuant to §14-63-45b of the Regulations of Connecticut State Agencies (regulations) were entitled to absolute immunity under the litigation privilege.[2] We disagree and, accordingly, affirm the judgment of the trial court.[3]

[1] Some of the initial plaintiffs, Elite Collision Center, LLC, Elmwood Automotive, LLC, and Ye Old State Auto Body, Inc., withdrew from this action prior to the filing of the operative complaint. Accordingly, all references to the plaintiffs in this opinion are to Modzelewski's Towing & Storage, Inc., Chris' Auto Clinic, LLC, MyHoopty.com, LLC, and Farmington Auto Park, LLC.

As noted herein, GEICO and the individual defendants filed separate motions to dismiss and memoranda of law in support of those motions, but the language and claims contained in their respective motions and memoranda of law were largely identical. Accordingly, we refer to the defendants collectively when addressing their claims and we refer to them by name when discussing claims or facts unique to each party.

[2] Section §14-63-45b of the regulations provides, inter alia, that any party filing a complaint with the department concerning the operations of and services provided by dealer or repairer licensees shall include certain information in a written complaint filed with the department. We note that General Statutes §14-63, pursuant to which the Commissioner of Motor Vehicles promulgated §14-63-45b of the regulations, was amended by the legislature in 2025; see Public Acts 2025, No. 25-55, §11; which, inter alia, codified provisions similar to existing department regulations, including the consumer complaints process for nonconsensual towing, transporting, and storage of vehicles. Whether and how No. 25-55, §11, of the 2025 Public Acts would impact the litigation privilege's applicability to these communications is not at issue before this court.

[3] The plaintiffs also claim that the trial court erred by dismissing the operative complaint because "the plaintiffs' complaint also alleges

The following facts, as alleged in the complaint[4] or as recited by the court, *Ozalis, J.*, in its memoranda of decision, and procedural history are necessary to the resolution of this appeal.[5] The court explained that "[t]he plaintiffs are licensed automotive dealers and repairers with operations and facilities throughout the state of Connecticut. GEICO sells insurance policies to members of the public in Connecticut. GEICO employs Vaz as an insurance investigator. At all relevant times, Vaz managed, directed, or otherwise worked with additional insurance investigators at GEICO. . . . Capri was [also] an employee of GEICO, who managed, directed, or otherwise managed insurance claims and directed employees as to the payment of property damage bills, including those for recovery, towing, storage, and repair for services

conduct that exists outside the [department's] complaint process. The complaint alleges that Vaz and Capri encouraged customers to make false or exaggerated complaints to the [department] in an effort to recoup money for GEICO and to intimidate the plaintiffs." In support of this claim, the plaintiffs make only a general policy argument that "[t]he scope of the defendants' assertion [that these communications are protected as preparatory communications in furtherance of the quasi-judicial proceeding] is breathtaking and must be deemed to be against public policy." The plaintiffs make no substantive argument beyond this bare assertion and point this court to no case law in support of this claim. In addition, the plaintiffs have not addressed the court's rejection of this precise argument or its conclusion that these communications too were "made within the course of a quasi-judicial proceeding." We decline to address this claim because it is inadequately briefed. See *State ex rel. Dunn* v. *Burton*, 229 Conn. App. 267, 304, 327 A.3d 982 (2024) ("[c]laims are . . . inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record" (internal quotation marks omitted)).

[4]It is well settled that, "[w]hen a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it . . . must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, 349 Conn. 120, 136, 314 A.3d 583 (2024).

[5]On August 2, 2024, the court issued two separate memoranda of decision addressing GEICO's and the individual defendants' motions to dismiss independently. The language and analyses of the memoranda of decision are largely identical and, accordingly, we address them together.

rendered in Connecticut . . . [and had] a supervisory role of Connecticut files for GEICO."

The plaintiffs' claims arise from allegations that the defendants filed false and malicious complaints against them with the department concerning the plaintiffs' charges for nonconsensual towing, transporting, and storage of several motor vehicles of the parties' customers pursuant to §14-63-45b of the regulations or conversations that the individual defendants had with customers discussing the plaintiffs' business practices and encouraging them to file complaints with the department. The court explained that the department "has received hundreds of complaints from GEICO, requesting that the [department] investigate claims of overcharging or improper charges by the plaintiffs' tow companies. The plaintiffs allege[d] that, since at least 2017, through 2021 . . . the defendants have made the . . . complaints and claims, which [were] baseless and without justification. The plaintiffs allege[d] that GEICO also [made] complaints and inform[ed] other jurisdictions, police departments, and other governmental entities of these alleged complaints in an attempt to claim that the plaintiffs' businesses [were] charging 'improperly.'"

In the operative complaint filed on December 9, 2022,[6] the plaintiffs asserted claims of tortious interference

---

[6]The operative complaint is the fourth revised amended complaint. The plaintiffs revised their complaint three times to comply with GEICO's May 24, 2022 request to revise and the court's September 12, 2022 order to comply with that request. After the plaintiffs filed the third revised complaint, GEICO moved for nonsuit, claiming that the third revised complaint was also noncompliant with its request to revise. On November 17, 2022, the court concluded that the third revised complaint was noncompliant and ordered the plaintiffs to revise their complaint to comply with the request to revise. After the withdrawal of several of the initial plaintiffs; see footnote 1 of this opinion; the plaintiffs filed the operative complaint.

The operative complaint alleged eighty separate counts, asserting ten separate causes of action against the defendants, including tortious interference with business expectancies, defamation through libel, defamation through slander, promissory estoppel, equitable estoppel, negligent misrepresentation, breach of the covenant of good faith and fair dealing, violations of the Connecticut Unfair Insurance Practices

with business expectancies, defamation through libel, defamation through slander, and promissory estoppel based on the defendants' alleged conduct.[7] On February 23, 2024, GEICO and the individual defendants moved

Act, General Statutes § 38a-815 et seq. and violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. On February 14, 2023, GEICO moved to strike multiple counts of the operative complaint. On August 3, 2023, the court granted in part and denied in part GEICO's motion to strike. On August 9, 2023, the plaintiffs withdrew the counts necessary to comply with the court's order.

[7] Specifically, all of the plaintiffs asserted claims of tortious interference with business expectancies against GEICO. Modzelewski's Towing & Storage, Inc., and MyHoopty.com, LLC, also asserted claims of tortious interference with business expectancies against Vaz, and MyHoopty.com, LLC, and Farmington Auto Park, LLC, alleged the same against Capri. The court explained that the plaintiffs alleged that the defendants "intentionally interfered with the business relationships between . . . [the plaintiffs] and their named customers in the following ways: making, preparing, and filing fraudulent and/or baseless reports as to the conduct of the plaintiffs; misrepresenting the actions of the plaintiffs in documents filed with [the department]; intimidating customers through coerced statements, making fraudulent statements to customers, or misrepresenting facts to customers about what had occurred; informing other jurisdictions, police departments, and other governmental entities of these alleged complaints; attempting to persuade customers to make complaints against the plaintiffs despite no reasonable basis to do so; [and/or] maliciously and knowingly attempting to attack the business relationships of the plaintiffs and their customers by attempting to persuade customers to make statements in contradiction to their previously signed documents, by claiming that the customers may suffer a financial penalty without cooperation . . . ."

Modzelewski's Towing & Storage, Inc., Chris' Auto Clinic, LLC, and MyHoopty.com, LLC, also asserted claims of defamation through libel against GEICO based on written statements made in complaints filed with the department. Modzelewski's Towing & Storage, Inc., and MyHoopty.com, LLC, alleged defamation through libel against Vaz based on the same underlying facts. Against GEICO and Capri, Farmington Auto Park, LLC, alleged defamation through slander based on certain oral statements made by Capri to various customers discussing the plaintiffs' business practices and encouraging the customers to file complaints with the department.

Finally, Modzelewski's Towing & Storage, Inc., Chris' Auto Clinic, LLC, and Farmington Auto Park, LLC, asserted claims of promissory estoppel against GEICO. The court explained that "[t]he plaintiffs allege[d] that GEICO . . . promised to pay the charges incurred and, relying on that promise, the plaintiffs agreed to release the vehicles at issue to . . . GEICO. The plaintiffs allege[d] that . . . GEICO paid the plaintiffs

separately to dismiss the remaining counts of the operative complaint for lack of subject matter jurisdiction on the ground, inter alia, that the plaintiffs' claims were barred by the litigation privilege.[8] Although GEICO and the individual defendants moved to dismiss the action separately, the language and claims contained in their motions and memoranda of law were largely identical. The defendants argued, inter alia, that because the department's "complaint and hearing process for challenging nonconsensual towing and storage charges qualifie[d] as a quasi-judicial proceeding," and because the filed complaints and alleged conversations with customers were statements made in the course of that quasi-judicial proceeding, the litigation privilege barred the plaintiffs' claims. In opposition to the motions to dismiss,[9] the plaintiffs argued, inter alia, that the statements contained in the complaints filed with the department were not made in a judicial or quasi-judicial proceeding and therefore were not entitled to absolute immunity under the litigation privilege.[10] The plaintiffs asserted

the monies they were owed, but . . . it [later sought] a refund of these monies in [its] . . . complaints [filed with the department]."

[8] The defendants also moved to dismiss the remaining counts on the ground that the plaintiffs' claims are barred by the *Noerr-Pennington* doctrine. See *United Mine Workers of America* v. *Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965); *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961). The court denied the defendants' motions to dismiss on this ground, reasoning that, "[i]n the absence of Connecticut appellate authority establishing that a motion to dismiss is a proper procedural vehicle to address the *Noerr-Pennington* doctrine, this court declines to find that this defense raises a jurisdictional issue that can be addressed in a motion to dismiss." The court's conclusion as to the applicability of the *Noerr-Pennington* doctrine is not at issue in this appeal.

[9] On May 6, 2024, the plaintiffs filed a memorandum of law in opposition to the individual defendants' motion to dismiss. On May 10, 2024, the plaintiffs filed a memorandum of law in opposition to GEICO's motion to dismiss.

[10] The plaintiffs also claimed that the motions to dismiss should be denied for the following reasons: an earlier denial of GEICO's motion to dismiss is the law of the case; the complaint specifically alleged that the statements were not made in the course of a judicial proceeding and therefore the litigation privilege did not apply; the repetitive nature of

that those statements, like statements made to the police in connection with a criminal investigation, should be entitled to qualified immunity, rather than the absolute immunity afforded by the litigation privilege.

On August 2, 2024, the court granted the defendants' respective motions to dismiss in two separate memoranda of decision. Although the decisions were issued separately, the court's legal analysis and conclusions were largely identical in both memoranda of decision. First, the court explained the department's procedure for challenging nonconsensual towing, transporting, and storage charges, including both the department's procedure for investigating consumer complaints outlined in §14-63-45c of the Regulations of Connecticut State Agencies[11] and the department's rules of practice

the defendants' filing of complaints was "sufficient to establish jurisdiction"; there was no evidence that the complaints submitted by the defendants were pursued by the department and no judicial proceeding was undertaken; and the complaints alleged statements were made to entities other than the department, such as the National Insurance Crime Bureau. The court rejected each of these arguments, and the plaintiffs have not raised them on appeal.

[11] Section 14-63-45c of the Regulations of Connecticut State Agencies provides in relevant part:

"(a) Within fourteen (14) days of receipt of a customer complaint, a person within the [department], as designated, shall notify the customer and the licensee that the complaint was received, and that it shall be subject to further investigation. The investigation shall consist of:

"1. A determination of whether the complaint is complete and all relevant documents are attached; and

"2. A determination of whether the complaint states facts which if true, give rise to one or more violations of sections 14-51 through 14-66c, inclusive, of the Connecticut General Statutes, the regulations adopted thereunder, or both. . . .

"(c) In the event that the complaint does not state facts that give rise to a violation of sections 14-51 through 14-66c, inclusive, of the Connecticut General Statutes, the regulations adopted thereunder, or both, the investigator shall notify the customer and the licensee in writing that the department does not have jurisdiction over the matter, and shall not proceed with the complaint.

"(d) If after investigation it is determined that a complaint is complete and states one or more violations of sections 14-51 through 14-66c, inclusive, of the Connecticut General Statutes, the regulations adopted thereunder, or both, the investigator shall notify the customer and the

for hearings set forth in §§ 14-137-36 through 14-137-39 of the Regulations of Connecticut State Agencies.

The court then addressed the factors that our Supreme Court, in *Kelley* v. *Bonney*, 221 Conn. 549, 606 A.2d 693 (1992), explained are relevant to a determination of whether a proceeding is quasi-judicial, namely, "whether the body has the power to: **(1)** exercise judgment and discretion; **(2)** hear and determine or to ascertain facts and decide; **(3)** make binding orders and judgments; **(4)** affect the personal or property rights of private persons; **(5)** examine witnesses and hear the litigation of the issues on a hearing; and **(6)** enforce decisions or impose penalties." Id., 567. The court determined that the first two *Kelley* factors weighed in favor of determining that the department's complaint and hearing proceeding is quasi-judicial in nature because "the [Commissioner of Motor Vehicles (commissioner)] or the designated hearing officer is vested with the discretion and judgment to consider motions, subpoena witnesses, require the

licensee. The notification shall relate the particular matters involved in the complaint, and shall inform the licensee that it shall respond to the matters alleged in the complaint within ten (10) days of the date of the notification.

"(e) Upon receipt of the licensee's response, the investigator may:

"1. Mediate a voluntary resolution of the complaint that is acceptable to the customer and the licensee;

"2. Recommend that the complaint proceed to an administrative hearing; or

"3. Determine that no action is to be taken, and notify the customer and the licensee in writing of the reason for that determination. . . .

"(h) If the investigator determines that there is one or more probable violations of sections 14-51 through 14-66c, inclusive, of the Connecticut General Statutes, or the regulations adopted thereunder, or both, and the [department] determines that it will take action thereon, the [department] shall notify the licensee and the customer and shall proceed in accordance with the Department of Motor Vehicles Rules of Practice as set forth in sections 14-137-36 through 14-137-39, inclusive, of the Regulations of Connecticut State Agencies, regardless of whether the matter has or has not been settled between the customer and licensee."

We note that General Statutes § 14-63, pursuant to which the Commissioner of Motor Vehicles promulgated § 14-63-45c of the regulations, was amended by the legislature in 2025. See 2025 Public Acts, No. 25-55, § 11. See footnote 2 of this opinion.

production of records, receive, consider, and evaluate the evidence, limit the number of witnesses, permit additional pleadings and evidence pre- and post-hearing, and issue a final decision based on their consideration of the entire record." With respect to the third *Kelley* factor, the court concluded that it too supported a finding that the proceeding was quasi-judicial because the hearing officer's findings of fact and final decision and "the investigator's preliminary determination that the facts in the complaint give or do not give rise to a probable violation may . . . be considered a binding judgment." The court also found that the fourth factor further supported this conclusion because "[a] possible consequence of a consumer complaint is the revocation or suspension of a license, which may restrict a business owner's ability to operate its business." The court concluded that the fifth factor was satisfied because "the hearing officer has the authority to regulate the administrative hearing and the proceeding has procedural safeguards to ensure the reliability of the information presented." The court did not explicitly address the sixth *Kelley* factor.

In accordance with our Supreme Court's guidance in *Kelley*, the court then addressed "whether there [was] a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity provides in this context." See *Kelley* v. *Bonney*, supra, 221 Conn. 567. The court, considered, inter alia, this court's discussion in *Lucky 13 Industries, LLC* v. *Commissioner of Motor Vehicles*, 210 Conn. App. 558, 574, 270 A.3d 188, cert. denied, 343 Conn. 905, 272 A.3d 1127 (2022), of the "imbalance [of power] inherent in nonconsensual towing transactions" and of the public policy motivations behind the legislature's creation of the regulations governing these transactions, and determined that public policy considerations supported the application of the litigation privilege in this context. The court therefore concluded that "a [department] complaint and hearing proceeding challenging nonconsensual towing and storage fees is quasi-judicial in nature and

[therefore that] statements made in the course of that proceeding are subject to absolute immunity.''

Having determined that a department complaint and hearing proceeding is quasi-judicial in nature, the court then assessed whether the statements forming the basis of the plaintiffs' allegations were made in the course of those proceedings. In addressing the statements contained in complaints filed with the department, the court explained that the litigation privilege protects statements contained in a complaint in a quasi-judicial proceeding and that the complaints at issue in the present case were no different. The court further determined that "these statements were relevant to the initial determinations that the [department's] investigator must make when reviewing . . . [the defendants'] complaints . . . ." Accordingly, the court concluded that the statements contained in the complaints filed with the department were made in the course of the quasi-judicial proceeding and therefore were protected by the litigation privilege.

As to the statements made by the defendants to various customers concerning the plaintiffs' nonconsensual towing, transporting, and storage of those customers' vehicles, the court concluded that the defendants' "alleged instructions to the plaintiffs' customers to file . . . complaints [with the department] and related communications and misrepresentations as to the plaintiffs' charges were directed toward the achievement of the object of their filing . . . complaints [with the department] and/or their goals in commencing . . . proceedings [before the department] against the plaintiffs . . . . These alleged statements were, therefore, made within the course of quasi-judicial proceedings and were relevant to the issues involved in the proposed and ongoing [department] proceedings.''

Because the plaintiffs' claims were predicated on the statements contained in the complaint or made in conversation with various customers concerning the filing of those complaints, the court concluded that the litigation privilege barred the plaintiffs' claims in their entirety.

This appeal followed. Additional facts and procedural history will be set forth as necessary.

On appeal, the plaintiffs contend that public policy considerations preclude the application of the litigation privilege to complaints filed with the department pursuant to §14-63-45b of the regulations.[12] We disagree.

We begin with well established principles regarding the litigation privilege and our standard of review. "The litigation privilege provides absolute immunity from suit and, therefore, implicates the court's subject matter jurisdiction. . . . Whether the litigation privilege applies in a given case is a question of law subject to de novo review. . . . When deciding whether the privilege applies, every presumption in favor of the court's jurisdiction should be indulged. . . .

"The litigation privilege is a long-standing [common-law] rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The privilege . . . applies to every step of the proceeding until [its] final disposition . . . including to statements made in pleadings or other documents prepared in connection with [the] proceeding. . . . The privilege originated in response to the need to bar persons accused of crimes from suing their accusers for defamation. . . . [It] then developed to encompass and bar defamation claims against all participants in judicial proceedings . . . . Subsequently, the privilege was expanded to bar a variety of retaliatory civil claims arising from communications or communicative acts occurring in the course of a judicial or quasi-judicial proceeding . . . .

"The policy underlying the [litigation] privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false

_____

[12]We reiterate that the plaintiffs' challenge to the court's decision relating to the statements made outside of the complaints filed with the department was inadequately briefed and we therefore decline to review it. See footnote 3 of this opinion.

and malicious statements. . . . Participants in a judicial process must be able to testify or otherwise take part without being hampered by fear of defamation [or other retaliatory litigation]." (Citations omitted; internal quotation marks omitted.) *Deutsche Bank AG* v. *Vik*, 349 Conn. 120, 136–38, 314 A.3d 583 (2024). "Put simply, absolute immunity furthers the public policy of encouraging participation and candor in judicial . . . proceedings. This objective would be thwarted if those persons whom the common-law doctrine was intended to protect nevertheless faced the threat of suit." (Internal quotation marks omitted.) *Gallo* v. *Barile*, 284 Conn. 459, 466, 935 A.2d 103 (2007).

To determine whether a statement is entitled to absolute immunity on the basis of the litigation privilege, courts must first determine whether the proceeding at issue is judicial or quasi-judicial in nature. Our Supreme Court has explained that "a quasi-judicial proceeding is one in which the entity conducting the proceeding has the power of discretion in applying the law to the facts within a framework that contains procedural protections against defamatory statements. As part of their inquiry into whether a proceeding is truly quasi-judicial, courts may consider the relevant factors enumerated by [the] court in *Kelley* [v. *Bonney*, supra, 221 Conn. 567] to determine whether the entity exercises powers akin to a judicial entity. . . . Courts may also consider other factors that are relevant to a given proceeding, including the procedural safeguards of the proceeding and the authority of the entity to regulate the proceeding. Finally, courts must always carefully scrutinize whether there is a sound public policy justification for the application of absolute immunity in any particular context." (Citation omitted.) *Priore* v. *Haig*, 344 Conn. 636, 652–53, 280 A.3d 402 (2022). "[I]n most cases, the policy considerations require balancing the public interest of encouraging public participation and candor, on the one hand, and the private interest of protecting individuals from false and malicious statements, on the

other." (Internal quotation marks omitted.) *Khan* v. *Yale University*, 347 Conn. 1, 35, 295 A.3d 855 (2023).

Once a court has "concluded that the statements . . . were made in the context of a judicial or quasi-judicial process, [it] must next determine whether the alleged defamatory statements were made in the course of that proceeding and whether they related to its subject matter." (Internal quotation marks omitted.) *Kruger* v. *Grauer*, 173 Conn. App. 539, 548, 164 A.3d 764, cert. denied, 327 Conn. 901, 169 A.3d 795 (2017). Our Supreme Court "consistently has held that communications are afforded immunity if they are uttered or published in the course of judicial [or quasi-judicial] proceedings and are in some way pertinent to the subject of the controversy. . . . For example, the privilege extends to pleadings and other papers made a part of a judicial or quasi-judicial proceeding . . . so long as the statements are sufficiently relevant to the issues involved in a proposed or ongoing judicial [or quasi-judicial] proceeding, with the test for relevancy described as generous . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Scholz* v. *Epstein*, 341 Conn. 1, 19–20, 266 A.3d 127 (2021). In other words, "[o]nce it is determined that a proceeding is [quasi-judicial] in nature, the absolute privilege that is granted to statements made in furtherance of it extends to every step of the proceeding until final disposition." (Internal quotation marks omitted.) *Priore* v. *Haig*, supra, 344 Conn. 646.

Here, as noted, the plaintiffs concede that a department hearing challenging nonconsensual towing, transporting, and storage fees is quasi-judicial in nature, and they do not challenge the court's analysis of the factors identified in *Kelley* v. *Bonney*, supra, 221 Conn. 567, but they contend that the court incorrectly concluded that public policy supported the application of the litigation privilege in this case.

In addressing the relevant public policy considerations, the court aptly explained, "a complaint to the [department] alleging improper charges or excessive fees for

nonconsensual towing and storage, and the administrative procedures that follow from such complaints, serve a public function of vital importance by providing a mechanism through which charges in excess of the rates established by the . . . commissioner may be reported to the proper authorities, and those subject to such regulatory authority held accountable, and most importantly, that such fees remain just and reasonable. . . . Therefore, the possible harm a false consumer complaint to the [department] regarding an excessive nonconsensual towing and storage charge may cause to a business' reputation, despite the procedural safeguards provided by the regulatory scheme governing such [department] hearings, is outweighed by the public's interest in encouraging the filing and investigation of valid complaints." (Citation omitted; internal quotation marks omitted.) The court recognized that this court previously has discussed the public policy considerations motivating our legislature's creation of a regulatory framework for the department's handling of complaints concerning the nonconsensual towing, transporting, and storage of motor vehicles. We have explained that "[t]he regulations governing nonconsensual tows were implemented to protect individuals whose vehicles have been towed without their consent from exorbitant towing and storage fees. Without regulation, a wrecker taking possession of a vehicle pursuant to a request by the police could charge whatever price the wrecker saw fit and the owner of the vehicle would have little choice but to pay the fee demanded to recover possession of the vehicle. . . . Our legislature sought to address the imbalance [of power] inherent in nonconsensual towing transactions by directing the commissioner to establish reasonable rates for the towing, transporting, and storing of motor vehicles that fairly compensate wreckers for their services." (Citation omitted.) *Lucky 13 Industries, LLC* v. *Commissioner of Motor Vehicles*, supra, 210 Conn. App. 574.

In support of their claim that public policy precludes the application of the litigation privilege to the complaints in

this case, the plaintiffs argue that the court mistakenly confused the need for regulation of nonconsensual towing, transporting, and storage of motor vehicles with the imbalance of power concerns motivating the application of the litigation privilege.[13] The plaintiffs contend that the court improperly "equated the relationship between a towing company and a citizen whose car has been towed to that of the relationship between the police and the citizenry being policed," thereby "confus[ing] the need for regulation of an industry . . . with the imbalance of power created by the unique institutional powers of the police recognized by our reviewing courts."[14] We disagree. The court properly examined the public interests motivating the legislature's creation of the regulations governing nonconsensual towing, transporting, and storage transactions as part of its analysis of whether public policy supported the application of the litigation privilege.[15] The legislature's motivations certainly are relevant to that determination because they reflect the

[13]The defendants contend that we should not consider public policy at this stage because "no court has ever even suggested the existence of a free-floating public policy exception to the litigation privilege where (as here) the existence of a judicial or quasi-judicial proceeding had been established . . . ." Even assuming, arguendo, however that the plaintiffs are correct that public policy could function as a catch-all exception to the applicability of the litigation privilege to communications made in the course of a judicial or quasi-judicial proceeding, we agree with the trial court that the public policy considerations in the present case support the application of the litigation privilege to complaints filed with the department.

[14]The plaintiffs contend that "[t]he public policy of . . . Connecticut should not be to allow large, national insurance companies to pepper the [department] with complaints about local towing companies . . . ." Although we recognize that, under the facts of this case, the complainant is a national insurance company, our holding in the present case would apply with equal force to individuals filing complaints and we therefore must examine the public policy considerations as they would impact similarly situated individuals as well.

[15]The plaintiffs argue that to justify the application of the litigation privilege, the imbalance of power at issue must be as drastic as the "unique" imbalance of power between police officers and citizens. The court aptly noted, however, that our reviewing courts have never suggested that to justify the application of the litigation privilege, the imbalance of power at issue must be as severe as the imbalance of

public interest in encouraging participation and candor in the proceeding. Moreover, the regulatory scheme would be ineffective if "the possibility of incurring the costs and inconvenience associated with defending a defamation suit . . . deter[red] a citizen with a legitimate grievance from filing a complaint." (Internal quotation marks omitted.) *Craig* v. *Stafford Construction, Inc.*, 271 Conn. 78, 95, 856 A.2d 372 (2004).

The plaintiffs also argue that complaints filed with the department are akin to statements made to the police in connection with a criminal investigation and, pursuant to *Gallo* v. *Barile*, supra, 284 Conn. 467, are entitled to only qualified immunity. This case, however, is readily distinguishable from *Gallo*. In *Gallo*, our Supreme Court held that informal statements made to the police in connection with a criminal investigation are protected only by qualified immunity rather than the litigation privilege. Id., 471–72. Although the court acknowledged that there were compelling arguments to support a determination that "statements made to the police in connection with a criminal investigation properly are considered 'preparatory' to the criminal judicial proceeding that necessarily follows the filing of any formal charges upon the conclusion of the investigation"; id., 470–71; the court concluded that only a qualified immunity was applicable. Id., 471. Taking public policy into consideration, the court concluded that "a qualified privilege is sufficiently protective of [those] wishing to report events

power between police officers and citizens. In fact, our Supreme Court has applied the litigation privilege to statements made in the course of a judicial or quasi-judicial proceeding where the same severity of imbalance of power arguably is not implicated. See, e.g., *Kelley* v. *Bonney*, supra, 221 Conn. 552–53 (statements made in verified petition and complaint initiating teacher decertification proceeding were protected by litigation privilege); *Petyan* v. *Ellis*, 200 Conn. 243, 250–51, 510 A.2d 1337 (1986) (letter sent by employer to state labor department as part of processing unemployment compensation claim was protected by litigation privilege). We agree with the court that the public interest in encouraging individuals to file complaints with the department outweighs the potential risk to the plaintiffs of having to defend themselves from false and malicious complaints and, therefore, supports the application of the litigation privilege.

concerning crime . . . . There is no benefit to society or the administration of justice in protecting those who make intentionally false and malicious defamatory statements to the police. The countervailing harm caused by the malicious destruction of another's reputation by false accusation can have irreparable consequences." (Internal quotation marks omitted.) Id., 471–72.

Our Supreme Court distinguished its holding in *Gallo* from *Craig* v. *Stafford Construction, Inc.*, supra, 271 Conn. 78, in which it held that an investigation conducted by the internal affairs division of a police department constituted a quasi-judicial proceeding and, therefore, that statements made in a complaint filed to initiate that investigation were protected by the litigation privilege. The court explained that "*Craig* does not control the outcome of this case. In *Craig*, the allegedly defamatory statements were published in a complaint that triggered a quasi-judicial proceeding. It is well established that allegations contained in a complaint in a quasi-judicial proceeding, like allegations contained in a complaint in a judicial proceeding, are absolutely privileged. . . . Accordingly, the statements at issue in *Craig* fell squarely within the privilege for statements made in the course of a quasi-judicial proceeding." *Gallo* v. *Barile*, supra, 284 Conn. 474. The court further concluded that public policy supported this distinction, reasoning that, "[a]lthough the detection of crime and the apprehension of criminals are extremely important goals, their achievement does not outweigh the harm that is likely to inure to an individual who is falsely and maliciously accused of criminal misconduct. Even after being cleared of wrongdoing, the victim of a false criminal accusation may suffer severe and long lasting emotional harm and damage to his reputation." Id., 475.

In the present case, a consumer complaint filed with the department is necessary to initiate the department proceeding that the plaintiffs concede is quasi-judicial in nature. The trial court explained, and the plaintiffs do not contest, that "[t]he [defendants'] alleged filing of

complaints with the [department] were part of the initial steps in the 'distinct possibility' that the [department] would commence proceedings against the plaintiffs." A complaint filed with the department pursuant to § 14-63-45b of the regulations is, therefore, a complaint triggering a quasi-judicial proceeding like the complaint initiating the internal affairs investigation at issue in *Craig*, and distinguishable from the informal statements at issue in *Gallo*. See *Gallo* v. *Barile*, supra, 284 Conn. 474. Moreover, we conclude that, in the present case, the strong public policy interests in encouraging individuals to file complaints with the department concerning improper nonconsensual towing, transporting, and storage transactions without the threat of suit weighs in favor of the application of the litigation privilege. We acknowledge that defending allegedly false and malicious complaints filed with the department poses a burden for the plaintiffs. Nevertheless, unlike statements made to the police in connection with a criminal investigation, we are persuaded that the public interest in encouraging the filing of complaints with the department outweighs the harm resulting from occasional false and malicious complaints.[16] Accordingly, we agree with the court that public policy supports the application of the litigation privilege to complaints filed with the department pursuant to § 14-63-45b of the regulations and, therefore, conclude that the court properly granted the defendants' motions to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[16] The plaintiffs also contend that the litigation privilege is inapplicable because a hearing before the department might result in criminal sanctions, but the mere possibility of criminal sanctions alone does not mean that a statement would not be protected by absolute immunity. Such a blanket rule would be inapposite to our case law because it is well settled that the litigation privilege applies to certain statements made in the course of a criminal proceeding despite a possible criminal sanctions resulting from those statements. See, e.g., *Harvin* v. *Yale New Haven Health Services Corp.*, 225 Conn. App. 171, 188–89, 315 A.3d 365 (2024) (recognizing that witness testimony in criminal trial is protected by litigation privilege).